VAN DOREN v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. March 28, 1899.)

No. 12 September Term.

1. JURISDICTION OF FEDERAL COURTS—PLACE OF BRINGING SUIT—RESIDENCE OF PARTIES.

A failure by a plaintiff to comply with the provision of the act of August 13, 1888 (25 Stat. 433), requiring that suit shall be brought only in the district of the residence of either the plaintiff or the defendant, where

the jurisdiction is founded only on diversity of citizenship, does not affect the general jurisdiction of the court over the cause, and is waived by a general appearance without objection.

**2.** DEATH BY WRONGFUL ACT—ACTIONS FOR DAMAGES—WHAT LAW GOVERNS.

Under a statute giving a right to sue for the recovery of damages resulting from injury occasioned by negligence, unlawful violence or a wrongful act, the tort constituting the gist of the action is not the resulting death, but such negligence, violence or act, although death must result before the statutory cause of action accrues. The right of action under such a statute depends upon the lex loci of the injury, and not the lex fori, and it is immaterial whether the death occurred within or outside of the state in which the injury was received.

**3.** SAME—ACTION IN ANOTHER STATE.

Where a right to maintain an action for damages for such death has become vested under a state statute, the action may be prosecuted in another state, unless contrary to its policy, in any court having jurisdiction of the subject-matter and of the parties.

**4.** AMENDMENT OF PLEADING—CHANGING CAPACITY IN WHICH PLAINTIFF SUES.

Where a plaintiff who is both widow and administratrix of the decedent, in bringing an action under a statute to recover damages for his death, sued in the wrong capacity, the court should, in furtherance of justice, on seasonable application, allow an amendment changing the capacity in which suit was brought in order to conform to the statute, where such amendment will not change the issues, the measure of recovery, nor in any way prejudice the defendant.

**5.** SAME—POWERS OF CIRCUIT COURTS—CONFORMITY TO STATE PRACTICE.

The several provisions of the law now embodied in Rev. St. §§ 914, 918, 954, being in pari materia, and included in the codification of June 22, 1874, must be construed together, and full effect should, as far as possible, be given to each of them, and, when so construed, section 914 does not compel a circuit court to conform in subordinate details to state practice as to the allowance of amendments to pleadings, where such conformity would result in substantial injustice to litigants; nor, where such result would follow, are its powers limited or affected by a judicial interpretation by a state court of a state statute relating to such matters, though it has by rule adopted the state practice, but not such judicial interpretation, as its own.

**6.** SAME—POWER TO PERMIT AMENDMENT AFTER FINAL JUDGMENT.

A circuit court has no power to allow an amendment to a declaration not applied for until after the close of the term at which a demurrer to such declaration was sustained and final judgment rendered for defendant.

**7.** APPEAL—DISPOSITION OF CAUSE ON REVERSAL.

Where a declaration in a circuit court in a case in which the decision of the circuit court of appeals is final was perhaps fatally defective on one ground, but was amendable, and a demurrer, which under the practice of the court was confined to the causes specified, did not assign such ground, but was erroneously sustained and judgment rendered for the defendant, the circuit court of appeals will reverse the judgment and permit the plaintiff to apply to the circuit court for leave to amend.

**8.** ACTION FOR DEATH FROM NEGLIGENCE, &C.—DEFECT OF PARTIES.

Whether the declaration in this action, brought by the administratrix of the decedent in the circuit court in New Jersey, is fatally defective because under the statute of Pennsylvania, where the injury occurred, the action was required to be brought by the widow—quære.

In Error to the Circuit Court of the United States for the District of New Jersey.

James L. Kelly (Aaron V. Dawes, of counsel), for plaintiff in error. Alan H. Strong, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BRAD-FORD, District Judge.

BRADFORD, District Judge. This is an action of tort brought by the plaintiff in error against the Pennsylvania Railroad Company for the recovery of damages for the death of Henry Van Doren which, as alleged in the declaration, resulted from injuries received by him in Pennsylvania through the negligence of the defendant. Laura L. Van Doren is both widow and administratrix of the deceased. She declared in the latter capacity. A general demurrer to the declaration was filed; the defendant subsequently specifying causes of demurrer as follows:

"1. Because the said declaration does not allege that the plaintiff is a resident of the state of New Jersey.

"2. Because neither the negligence of the defendant nor the injury to said Henry Van Doren from which the said supposed cause of action arose occurred within the state of New Jersey."

By the practice in the court below, conforming by virtue of section 914 of the Revised Statutes of the United States to that of the state courts of New Jersey, the defendant was confined to the causes of demurrer specified. The court below sustained the demurrer on each of the grounds above mentioned and gave final judgment for the defendant November 10, 1897. Subsequently the plaintiff applied to the court "to permit Laura L. Van Doren to declare as the widow of Henry Van Doren in conformity with the requirement of the statute of Pennsylvania, and to substitute the widow of Henry Van Doren for his administratrix as the plaintiff." This application was refused, the learned judge below saying, "Though it happens that the administratrix and widow are one in name, the right of action is different and suit should be begun de novo. The motion to amend is denied." The errors assigned are as follows:

"First. That the said judge adjudged that because the injury mentioned in the said record occurred in the state of Pennsylvania, the same was not cognizable before the United States circuit court for the district of New Jersey.

"Second. Because the said judge illegally adjudged that the said declaration lacked an allegation of the residence of the plaintiff.

"Third. Because the said judge illegally gave judgment in favor of the defendant, whereas by law upon the record judgment should have been given for the plaintiff.

"Fourth. Because the said judge illegally gave judgment final in favor of the defendant, whereas by the law of the land judgment should have been given in favor of the defendant with leave to the plaintiff to amend her declaration."

By the act of congress of August 13, 1888, relating to the jurisdiction of circuit courts of the United States, it was provided that, "where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." 25 Stat. 433. Diversity of citizenship as between the parties sufficiently appears on the face of the declaration, but there is no allegation of the residence of either party in the district of New Jersey. Such residence was not necessary to the general jurisdiction of the court over

the cause.   A failure to comply with the provision requiring it may be waived by the defendant, and is waived by a general appearance without objection.   In Interior Construction Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, where the provision in question was under consideration, the court said:

"The circuit courts of the United States are thus vested with general jurisdiction of civil actions, involving the requisite pecuniary value, between citizens of different states.   Diversity of citizenship is a condition of jurisdiction, and, when that does not appear upon the record, the court, of its own motion, will order the action to be dismissed.   But the provision as to the particular district in which the action should be brought does not touch the general jurisdiction of the court over such a cause between such parties; but affects only the proceedings taken to bring the defendant within such jurisdiction, and is a matter of personal privilege, which the defendant may insist upon, or may waive, at his election; and the defendant's right to object that an action, within the general jurisdiction of the court, is brought in the wrong district, is waived by entering a general appearance, without taking the objection."

A general appearance having been entered in this case without an objection that neither of the parties resided in New Jersey, the court below was clearly in error in sustaining the demurrer on the first ground.

Was the demurrer sustainable on the second ground?   Section 19 of the Pennsylvania act of assembly of April 15, 1851 (P. L. 669), is as follows:

"Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives, may maintain an action for and recover damages for the death thus occasioned."

Section 1 of the Pennsylvania act of April 26, 1855 (P. L. 309), is as follows:

"The persons entitled to recover damages, for any injury causing death, shall be the husband, widow, children or parents of the deceased, and no other relative, and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors."

Section 2 of the same act provided that "the declaration shall state who are the parties entitled in such action," and that "the action shall be brought within one year after the death, and not thereafter."

Sections 1 and 2 of the New Jersey act of assembly of March 3, 1848 (1 Gen. St. N. J. p. 1188), are as follows:

"Section 1. That whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 2. That every such action shall be brought by and in the names of the personal representatives of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow

and next of kin in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person; provided, that every such action shall be commenced within twelve calendar months after the death of such deceased person."

These several statutory provisions were in force at the time of the alleged injury resulting in death and still continue operative. The widow of Henry Van Doren, instead of suing as such widow under the Pennsylvania statute of April 15, 1851, brought an action as his administratrix, basing it upon the New Jersey statute above mentioned. A civil action to recover damages for death resulting from negligence was unknown to the common law. It can be maintained only by virtue of a statute creating it; and any recovery must be within the measure of relief accorded by the statute and at the suit of the person or persons on whom the statute confers the right of action. It appears from the declaration that Henry Van Doren died in New Jersey as the result of his injury in Pennsylvania. Both the alleged negligence and such injury, aside from death, wholly occurred in the latter state. Did the New Jersey statute on the one hand, or the Pennsylvania statute on the other, create the cause of action in this case? An action under either of these statutes is founded in tort. The tort, which is the gist of the action, is negligence, unlawful violence or a wrongful act proximately causing personal injury resulting in death. While the action lies to recover damages for death, death does not constitute the tort. The fact of death is not the tort, but its consequence. Negligence, unlawful violence or a wrongful act is the tort, although death must result from injury caused by such negligence, violence or act before the statutory cause of action accrues. In the absence of any statutory provision confining the action to cases where both the injury and resulting death occur within the state, it is immaterial in an action under the statute of the state in which the injury was received, whether death occurred within or without its limits. In either case death results from tort committed within the state and the loss to surviving relatives is the same. That the place of death should, in the absence of a statute so providing, determine the existence or nonexistence of a cause of action is uncalled for by any principle of state policy and repugnant to justice. We have failed to discover any case in conflict with this conclusion. It is true that Mr. Justice Field, in delivering the opinion of the court in Railway Co. v. Whitton's Adm'r, 13 Wall. 270, used language which at first sight may seem to bear to the contrary. That case was an action to recover damages for death under a statute of Wisconsin which created a right of action "whenever the death of a person shall be caused by a wrongful act, neglect, or default," subject to a proviso that "such action shall be brought for a death caused in this state, and in some court established by the constitution and laws of the same." Rev. St. Wis. § 4255. The action was brought in the state court and removed to the circuit court for the Eastern district of Wisconsin. The injury resulting in death was received in that state, but the case does not

disclose where the death occurred.   Mr. Justice Field, after referring
to the statute, said:

"It is undoubtedly true that the right of action exists only in virtue of the
statute, and only in cases where the death was caused within the state.   The
liability of the party, whether a natural or an artificial person, extends only
to cases where, from certain causes, death ensues within the limits of the
state."

This language was used with reference to the words "death caus-
ed in this state" on the assumption that those words required that
death should occur therein, and was simply an interpretation of
that statute.   The point, however, was not involved in the case.
So far as the Wisconsin statute was concerned the decision turned
on the question of the validity of the limitation to the state courts
of the remedy given by the statute.   In Rudiger v. Railroad Co.,
94 Wis. 191, 68 N. W. 661, the precise point was involved.   There
the injury was received in Wisconsin and death occurred in Min-
nesota, and the action was brought under the Wisconsin statute
above referred to.   The only question presented was whether a
death occurring outside the state, but resulting from wrongful and
negligent acts within the state, was embraced within the statute.
The supreme court of Wisconsin, in holding that the action would
lie, said:

"The cause of action is obviously the wrongful act or neglect.   The proviso
contains two limitations upon the right to prosecute the action, and requires
(1) that 'such action shall be brought for a death caused in this state, (2) in
some court established by the constitution and laws of the same.'   It is not
made of the substance of the right of action that the death should have oc-
curred within the state, but the gist and substance of the provision is that the
death shall have been caused by a wrongful act, neglect, or default occurring
in this state; but in what state the damages ensued thereon was not, we
think, intended to be made material.   In the construction of the act we ought
not to restrict its beneficent provisions by a strained or fanciful construction,
which a consideration of the former state of the law, and the defect to be
remedied, satisfies us was not intended.   The statute is a remedial one, and
should be construed, not strictly, but so as to advance the remedy, and sup-
press the supposed wrong and injustice existing under the former condition
of the law.   The legislature doubtless had in view the result ensuing from
such 'wrongful act, neglect, or default, and, if it had been intended that the
action should not be maintained when caused by a wrongful neglect or default
occurring in this state if the consequence or death occurred outside of the
state, it seems reasonable to suppose that they would have expressly so pro-
vided."

We are therefore of opinion that the widow of Henry Van Doren
had under the Pennsylvania statute a vested right of action to
recover damages for the death of her husband which unquestion-
ably could have been prosecuted either in a court of that state
or in the circuit court for the Eastern district thereof.   Why
should it not be prosecuted in the circuit court for the district
of New Jersey?   It is true that the New Jersey statute has no
extraterritorial operation and does not create a right to main-
tain an action in that state to recover damages for death result-
ing from personal injury caused by negligence in Pennsylvania.
The right of action necessarily depends in such a case upon the
lex loci of the injury, and not the lex fori.   On the other hand,

the Pennsylvania statute could not confer jurisdiction on either the state or federal courts in New Jersey. That statute, however, created a substantial right capable of enforcement in New Jersey by any court otherwise possessing competent jurisdiction, unless such enforcement would conflict with the policy of that state. In our opinion there would be no such conflict. The leading case on this subject is Dennick v. Railroad Co., 103 U. S. 11, where an action had been brought under the New Jersey statute above referred to in a state court of New York by an administratrix, appointed in the latter state, to recover damages for the death of her husband resulting from injury alleged to have been caused by negligence on the part of the defendant in New Jersey. The action was removed to the circuit court for the Northern district of New York. The circuit court held that the action could not be sustained. The supreme court reversed the judgment. Mr. Justice Miller, in delivering the opinion of the court, said:

"It must be taken as established by the record that the accident by which the plaintiff's husband came to his death occurred in New Jersey under circumstances which brought the defendant within the provisions of the first section of the act making the company liable for damages, notwithstanding the death. It can scarcely be contended that the act belongs to the class of criminal laws which can only be enforced by the courts of the state where the offence was committed, for it is, though a statutory remedy, a civil action to recover damages for a civil injury. It is indeed a right dependent solely on the statute of the state; but when the act is done for which the law says the person shall be liable, and the action by which the remedy is to be enforced is a personal and not a real action, and is of that character which the law recognizes as transitory and not local, we cannot see why the defendant may not be held liable in any court to whose jurisdiction he can be subjected by personal process or by voluntary appearance, as was the case here. It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is a statutory right or a common-law right. Wherever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties. The action in the present case is in the nature of trespass to the person, always held to be transitory, and the venue immaterial."

The learned judge below, in sustaining the demurrer on the second ground, namely, "because neither the negligence of the defendant nor the injury to said Henry Van Doren from which the said supposed cause of action arose occurred within the state of New Jersey," was clearly in error. Confined, as the defendant was, to the two causes specified, the demurrer should have been overruled.

If the application by the plaintiff for leave to amend was seasonably made, should it not have been granted? She asked to be allowed "to declare as the widow of Henry Van Doren in conformity with the requirement of the statute of Pennsylvania, and to substitute the widow of Henry Van Doren for his administratrix as the plaintiff." The proposed amendment would not, if properly allowed, have changed the cause of action or affected in any manner the measure of proof necessary to establish the alleged tort. It would not have changed the issue to be tried or have

increased or diminished the amount to be recovered. It could not have operated to the prejudice of the defendant. It would merely have changed the capacity in which the suit should be prosecuted by Laura L. Van Doren from that of administratrix to that of widow of the decedent, thereby conforming to the Pennsylvania statute. It could have been of no consequence to the defendant who should ultimately receive the amount of any verdict against it, if the final judgment rendered in the action would bar a second suit for damages for the death of Henry Van Doren; and that the judgment would have operated as such bar we have no doubt. In fact it appears from the declaration that Henry Van Doren left to survive him several children, and under the intestate laws of Pennsylvania, the widow and children would share in the amount of any recovery in the same manner and proportions as they would under the intestate laws of New Jersey had the injury been received in the latter state and the action been successfully prosecuted under the statute thereof. Pepper & L. Dig. Pa. pp. 2408, 2410; 2 Gen. St. N. J. p. 2389. Nor would such an amendment have been repugnant to the one-year limitation prescribed by the Pennsylvania statute. Railway Co. v. Cox, 145 U. S. 593, 603, 12 Sup. Ct. 905. With such an amendment, properly allowed, the declaration would have set forth a clear right of action under that statute. If a person who is both widow and administratrix sues in the wrong capacity the action may be defeated and great hardship result unless an amendment be allowed permitting her to prosecute the action in the right capacity. There is abundant authority to the effect that under a general power to allow amendments necessary for the determination of the real question in controversy between the parties, an amendment touching the capacity in which the plaintiff sues or declares should, when properly applied for, be permitted where substantial justice requires it. Wood v. Circuit Judge, 84 Mich. 521, 47 N. W. 1103, is a case much in point. There an action had been brought on a policy of life insurance payable to the wife of the deceased or his "heirs, administrators or assigns." The wife died before her husband and suit under the advice of counsel was erroneously brought by the administrator c. t. a. of the wife instead of by the decedent's heirs. An application by petition was made to the court below to strike out the name of the administrator and substitute the heirs as plaintiffs. This application was denied. The supreme court of Michigan allowed a writ of mandamus to compel the court below to permit the amendment, saying:

"We are asked to issue a writ of mandamus directed to said circuit judge, commanding him to enter the order prayed for in said petition, and to vacate his order denying the same. It is contended that mandamus will not lie to review the exercise of judicial discretion, and that in this case the respondent denied the proposed amendment in the proper exercise of such discretion. But this is a case where the right of action will be lost unless the amendment is permitted, and great injustice be done to the heirs of Frank Silvers, who cannot be said to be responsible for the mistake made in the name of the plaintiff in the commencement of the action, and we cannot believe that the learned circuit judge would have refused such amendment had he supposed he had power to make it. The point is made here, as it undoubtedly was

before him, that the allowance of this amendment would permit the introduction of a new and distinct cause of action against the insurance company. If so, the circuit judge would have no authority to grant it. But we do not think that it introduces any new cause of action. The real plaintiffs in the action, as commenced in the first place,—the persons to be benefited by this insurance certificate,—were the heirs at law of Frank Silvers. If the policy had vested, as at first supposed, in Josie Silvers before her death, and it was a part of her estate, under her will it descended to Frank Silvers, her husband, and, he dying intestate, it then went to his heirs at law. Under our rulings it never vested in Josie Silvers, but belongs to the heirs at law of Frank, so that the real persons interested and sharing the money to be obtained from it are the same in both cases, to wit, the heirs at law of Frank Silvers. In both cases it is really a claim of these heirs against the insurance company, and the only difference is in the mode of its transfer to them,—a mere technicality in the legal steps necessary to be taken to collect it. · Clearly in this case the money due upon this insurance certificate is payable to the heirs of Frank L. Silvers, and it would be a denial of justice not to permit this amendment. * * * The amendment is in the furtherance of justice, and the insurance company cannot be surprised by it; neither will it be deprived of any substantial or essential rights in the premises, in my opinion."

While we express no opinion on the propriety of proceeding by mandamus under such circumstances, the application to amend should in our judgment have been granted in this case if within the power of the court and seasonably made.

Had the court below power, on proper application, to allow the amendment? Section 954 of the Revised Statutes of the United States, taken from the judiciary act of September 24, 1789, provides that in civil cases in any court of the United States the court "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe." Section 918 taken from the act of March 2, 1793, as modified by the act of August 23, 1842, is as follows:

"Sec. 918. The several circuit and district courts may, from time to time, and in any manner not inconsistent with any law of the United States, or with any rule prescribed by the supreme court under the preceding section, make rules and orders directing the returning of writs and processes, the filing of pleadings, the taking of rules, the entering and making up of judgments by default, and other matters in vacation, and otherwise regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

Section 914, taken from the act of June 1, 1872, is as follows:

"Sec. 914. The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

These several provisions are not only in pari materia but are included in the codification of the statutes of the United States of June 22, 1874, as in force December 1, 1873, and "general and permanent in their nature." Having thus been adopted and enacted as a whole, they must be construed together and full effect should, as far as possible, be given to each of them. While it was the clear intention of congress that the practice and pleadings in civil actions at law

in the circuit court should generally conform to the practice and pleadings in like causes in the courts of record of the state in which the circuit court should be held, exact conformity is not required, but only conformity "as near as may be." Circuit courts, subject to the requirement of such general conformity, may in any manner not inconsistent with any law of the United States or with any rule lawfully prescribed by the supreme court "regulate their own practice as may be necessary or convenient for the advancement of justice," and permit parties to "amend any defect in the process or pleadings, upon such conditions" as they shall, in their discretion and by their rules, prescribe. The circuit courts are not bound to conform to state practice or pleadings in subordinate details where such conformity would result in gross or substantial injustice to litigants. Nor where such result would follow are their powers with respect to practice or pleading directly or indirectly limited or affected by any judicial interpretation by a state court of a state statute relating to such matters. In Railroad Co. v. Horst, 93 U. S. 291, the court said:

"The conformity is required to be 'as near as may be'—not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose; it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as congress expected they would do, any subordinate provision in such state statutes which, in their judgment, would unwisely incumber the administration of the law, or tend to defeat the ends of justice, in their tribunals."

In Shepard v. Adams, 168 U. S. 618, 18 Sup. Ct. 214, the court, after referring to several of the sections of the Revised Statutes, including among others sections 914, 915, 916 and 918, said:

"We think it is sufficiently made to appear, by these citations from the statutes, that while it was the purpose of congress to bring about a general uniformity in federal and state proceedings in civil cases, and to confer upon suitors in courts of the United States the advantage of remedies provided by state legislation, yet that it was also the intention to reach such uniformity often largely through the discretion of the federal courts, exercised in the form of general rules, adopted from time to time, and so regulating their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

In O'Connell v. Reed, 56 Fed. 531, 5 C. C. A. 586, the circuit court of appeals for the Eighth circuit, in discussing section 914, said:

"Under this act, wherever the pleadings, practice, and modes of procedure in the state courts, as they have been established by the statutes of a state, and the decisions of its highest judicial tribunal, do not impede the administration of the law, or the efficiency of the federal courts, they are, and ought to be, followed in those courts. In other words, in matters where it is important that the rule of practice or procedure in the state and federal courts shall be uniform, but largely immaterial what that rule should be, the pleadings, practice, and procedure in the federal court must, under this statute, conform to those in vogue in the state courts under the statutes of the state. * * * But, on the other hand, the courts of the United States are not subordinate to the courts of the states. They constitute an independent judiciary system, the judges of which do not derive their powers from the states, nor can the legislation of the states, or the decisions of their courts, determine the limits of those powers, or prescribe the duties their exercise imposes. * * * It was not the intention of congress to require, by the passage of this act of conformity, the adoption by the circuit courts of any rule of pleading, practice or procedure enacted by state statute, or announced by the decision of a state court, which would enlarge or restrict the jurisdiction of the

federal courts, or prevent the wise administration of the law in the light of their own system of jurisprudence, as defined by their own constitution, as tribunals, and the acts of congress upon that subject. On the other hand, that act expressly reserves to the judges of those courts the right, and, we think, imposes upon them the duty, in the exercise of a wise judicial discretion, to reject any statute, practice or decision that would have such an effect."

The rule of the court below touching practice therein is as follows:

"It is ordered by the circuit court of the United States for the district of New Jersey that this court adopt the rules of practice and proceeding now in force in the highest courts of the state of New Jersey (the court of chancery, when the equity rules do not apply, and so far as they are applicable, and the supreme court), and such changes therein as shall be made from time to time."

We are not aware of the existence of any rule of practice or procedure in any of the state courts of New Jersey to the effect that where an action for damages for death resulting from personal injuries received elsewhere than in New Jersey is brought by a person in a wrong capacity no amendment can be allowed changing that capacity to one in which the suit can properly be maintained. In so far as there may be a practice on this point in the courts of New Jersey it must result from the construction, either judicial or otherwise, of the statute of that state relating to amendments. That statute is of the most comprehensive character. 2 Gen. St. N. J. p. 2556, § 138. It is as follows:

"138. That in order to prevent the failure of justice by reason of mistakes and objections of form, it shall be lawful for the court, or any judge thereof, at all times, to amend all defects and errors in any proceeding in civil causes, whether there is anything in writing to amend by or not, and whether the defect or error be that of the party applying to amend or not, and all such amendments may be made with or without costs, and upon such terms as to the court or judge may seem fit; and all such amendments as may be necessary for the purpose of determining in the existing suit the real question in controversy between the parties shall be so made."

In Lower v. Segal, 59 N. J. Law, 66, 34 Atl. 945, the supreme court of New Jersey held, on demurrer to a declaration, that an administratrix, who was also widow of the decedent, could not maintain an action in that state under the Pennsylvania statute to recover damages for the death of her husband resulting from alleged negligence of the defendant in the latter state, and that to warrant a recovery the widow, in the character of widow, should have sued. Subsequently the plaintiff applied to the same court for leave to amend the process and declaration "in such manner that the action may appear to be one brought by the widow of the deceased." Lower v. Segal, 60 N. J. Law, 99, 36 Atl. 777. The court denied the application on several grounds, and, among other things, said:

"Furthermore, I am of opinion that we are not required to make such an amendment by the provisions of section 138 of the practice act (2 Gen. St. p. 2556), which directs us to make all amendments necessary for the determination in an existing suit of the real question in controversy between the parties. In considering whether these provisions require the amendment now asked for, it is obvious that the question presented is the same as would be presented if the present plaintiff were John Doe, administrator of the deceased, and cannot be affected by the fact that the plaintiff is both the administratrix and the widow of deceased. The right of the widow to turn this action into one in her own behalf cannot be greater than her right to intervene with

a similar motion, in an action brought by some other person as the personal representative of her husband. * * * In my judgment, the provisions of section 138 do not apply to such a case, and do not require the amendment to be made. The amendment would not continue the existing suit except in mere form, but would create and institute a new suit, with a new question, and in a controversy between different parties."

Entertaining high respect for the supreme court of New Jersey, we are nevertheless of the opinion that the court below was under no obligation to follow the above decision. It was not even a determination by the court of last resort in that state; nor do the reasons advanced by the court in that case commend themselves to our judgment so far as the point now under consideration is concerned. It further seems to us that the result reached in that case is inconsistent with the ruling of the court of errors and appeals of New Jersey in Farrier v. Schroeder, 40 N. J. Law, 601. In the latter case it appears that the plaintiff had brought an action of covenant on certain sealed instruments running to her agent, and after the overruling of a motion for a nonsuit on the ground that the evidence showed a right of action, not in the plaintiff, but in her agent, who might maintain a second suit against the defendant for the same matter, leave was granted by the court below to amend by substituting in the process and pleadings the name of the agent for that of his principal. The court of errors and appeals in affirming the judgment said, with respect to section 138, that "the power of amendment could hardly be conferred in terms more comprehensive and explicit." The amendment upheld by the court of last resort in New Jersey, allowing the substitution of one person for another as plaintiff, necessarily involved a larger exercise of the power of amendment than could the granting of leave to amend by merely changing the capacity in which the person sues, where the cause of action and the persons to be benefited by the recovery remain the same, and where the judgment would bar a second suit for such cause of action. We have no doubt that the court below had power to grant the application to amend and should have granted it, if made at the proper time. The application, as may fairly be inferred from the record, was not made until on or about April 28, 1898. The granting of it would have involved the opening of the judgment on the demurrer. The term during which that judgment was rendered had theretofore expired, and the court below was consequently powerless to allow the proposed amendment. Bronson v. Schulten, 104 U. S. 410; Phillips v. Negley, 117 U. S. 655, 6 Sup. Ct. 901.

Assuming that the declaration is fatally defective in that Laura L. Van Doren declared as administratrix instead of widow, the case presents itself to us in the following phase. The defendant was confined to the causes of demurrer specified. Those causes did not include the above defect and the demurrer should have been overruled. Had it been overruled the plaintiff might have had an opportunity to correct by amendment the fault remaining in the declaration. Substantial justice requires that such an amendment should be allowed, as a second suit for damages for the death of Henry Van Doren would be barred by the one year limitation in the Pennsylvania statute. Under the authorities the plaintiff is entitled to be placed in a

position where the court below, in the light of this opinion, may allow a proper amendment to be made in furtherance of justice. In The Caroline v. U. S., 7 Cranch, 496, the court reversed a decree of forfeiture on the ground of defectiveness in the statement of facts in the libel, directing "that the cause be remanded to the said circuit court, with directions to admit the libel to be amended." In House v. Mullen, 22 Wall. 42, the court held that a demurrer to a bill in equity for misjoinder of parties complainant had properly been sustained, but said that "to prevent what may be a great injustice, we must reverse the present decree and remand the case, with directions to allow plaintiffs to amend their bill as they may be advised." U. S. v. Boyd, 15 Pet. 187, presents in some of its features a strong analogy to the case in hand. The court below had sustained a demurrer to a replication assigning breaches of the condition of an official bond of a receiver of public moneys. The action had been brought in the circuit court for the district of Mississippi and by a statute of that state demurrants were confined to causes specially alleged in the demurrer. The assignment of several breaches in the replication was not specified as a ground of demurrer. The court, after holding that the demurrer had been erroneously sustained below, said:

"That several breaches had been assigned, is not alleged as a special cause of demurrer, and therefore could not have been noticed by the court, had no provision existed justifying more breaches than one; even had such replication been contrary to the strict rules of pleading by the common law. It is proper to remark, that when this case is remanded to the circuit court for further proceedings to be had therein, it will be in the condition it would have been, had that court overruled the demurrer; and subject to additional pleadings, or an amendment of the present ones, according to the rules and practice of the circuit court, and on such terms as it may impose."

Section 10 of the act of March 3, 1891, establishing the United States circuit courts of appeals, contains the following provision:

"Whenever on appeal or writ of error or otherwise a case coming from a district or circuit court shall be reviewed and determined in the circuit court of appeals in a case in which the decision in the circuit court of appeals is final such cause shall be remanded to the said district or circuit court for further proceedings to be there taken in pursuance of such determination."

Under this provision this court has power, like that possessed by the supreme court, to reverse the judgment below and permit the plaintiff to apply to it for the allowance of an amendment. Hubbard v. Trust Co., 30 C. C. A. 520, 87 Fed. 51; Insurance Co. v. Barker, 88 Fed. 814, 32 C. C. A. 124; Hunt v. Howes, 74 Fed. 657, 21 C. C. A. 356.

We are, however, by no means clear, in view of a recent decision by the supreme court, that an amendment of the process or declaration is necessary for a recovery in this case. In Stewart v. Railroad Co., 168 U. S. 445, 18 Sup. Ct. 105, it appears that the plaintiff below as administrator brought an action in the supreme court of the District of Columbia to recover damages for the death of his intestate through alleged negligence of the defendant in Maryland. A statute in force in the District of Columbia provided that damages not exceeding $10,000 might be recovered for death from negligence within the district; that the action should be brought in the name of the

personal representative of the deceased within one year after such death; and that the damages recovered should not be appropriated to the payment of the debts of the deceased, but inure to the benefit of his or her family and be distributed according to the statute of distributions.

A statute of Maryland also provided for the recovery of damages for death resulting from negligence. Section 2 of the latter statute (Pub. Gen. Laws, art. 67) was as follows:

"Sec. 2. Every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused, and shall be brought by and in the name of the state of Maryland, for the use of the person entitled to damages, and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought, and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the above mentioned parties, in such shares as the jury by their verdict shall find and direct: provided, that not more than one action shall lie for and in respect of the same subject-matter of complaint; and that every such action shall be commenced within twelve calendar months after the death of the deceased person."

A demurrer to the declaration was sustained and judgment rendered accordingly, which was affirmed by the court of appeals of the District. The plaintiff carried the case to the supreme court of the United States. Mr. Justice Brewer, in delivering the opinion of the court, said:

"The court of appeals was of opinion that the action could not be maintained under the statute of the District of Columbia, because that authorized recovery only in case the injury causing death is done within the limits of the District, nor under the Maryland statute because of the peculiar form of remedy prescribed therein. * * * It has been held by this court in repeated cases that an action for such a tort can be maintained 'where the statute of the state in which the cause of action arose is not in substance inconsistent with the statutes or public policy of the state in which the right of action is sought to be enforced.' * * * What are the differences between the two statutes? As heretofore noticed, the substantial purpose of these various statutes is to do away with the obstacle to a recovery caused by the death of the party injured. Both statutes in the case at bar disclose that purpose. By each the death of the party injured ceases to relieve the wrongdoer from liability for damages caused by the death, and this is its main purpose and effect. The two statutes differ as to the party in whose name the suit is to be brought. In Maryland the plaintiff is the state; in this district the personal representative of the deceased. But neither the state in the one case nor the personal representative in the other has any pecuniary interest in the recovery. Each is simply a nominal plaintiff. While in the District the nominal plaintiff is the personal representative of the deceased, the damages recovered do not become part of the assets of the estate, or liable for the debts of the deceased, but are distributed among certain of his heirs. By neither statute is there any thought of increasing the volume of the deceased's estate, but in each it is the award to certain prescribed heirs of the damages resulting to them from the taking away of their relative. For purposes of jurisdiction in the federal courts regard is had to the real rather than to the nominal party. * * * It is true those were actions on contract, and this is an action for a tort, but still in such an action it is evident that the real party in interest is not the nominal plaintiff but the party for whose benefit the recovery is sought; and the courts of either jurisdiction will see that the damages awarded pass to such party. Another difference is that by the Maryland statute the jury trying the cause apportion the damages awarded between the parties for whose benefit the action is brought, while by the statute

93 F.—18

of the District the distribution is made according to the ordinary laws of distribution of a decedent's estate. But by each the important matter is the award of damages, and the manner of distribution is a minor consideration. Besides, in determining the amount of the recovery the jury must necessarily consider the damages which each beneficiary has sustained by reason of the death. By neither statute is a fixed sum to be given as a penalty for the wrong, but in each the question is the amount of damages. It is true that the beneficiaries of such an action may not in every case be exactly the same under each statute, but the principal beneficiaries under each are the near relatives, those most likely to be dependent on the party killed, and the remote relatives can seldom, if ever be regarded as suffering loss from the death. We cannot think that those differences are sufficient to render the statute of Maryland in substance inconsistent with the statute or public policy of the District of Columbia, and so, within the rule heretofore announced in this court, it must be held that the plaintiff was entitled to maintain this action in the courts of the District for the benefit of the persons designated in the statute of Maryland."

While it may not be necessary to amend the process or declaration to warrant a recovery by the plaintiff in this case, we think that in order to remove all doubt on the point she should be accorded an opportunity to amend, if she shall so elect.

The judgment below is reversed, with costs, and with leave to the plaintiff to apply within 60 days to amend in such manner as to make the action conform to the Pennsylvania statute.