### ELLICOTT MACHINE CORPORATION v. VOGT BROS. MFG. CO.

(District Court, W. D. Kentucky. February 21, 1920.)

1. **Appeal and error** ⊃361(5)—**Right to writ of error must be passed on when question raised.**

   Under section 1 of rule 13 of the Circuit Court of Appeals for the Sixth Circuit (202 Fed. viii, 118 C. C. A. viii), authorizing District Judges to allow writs of error, when objection to such allowance is made on the ground that the time therefor has expired, the question must be passed on by the District Judge.

2. **Courts** ⊃354—**Signing judgment on separate paper, and not on order book, sufficient conformity to state practice.**

   Signing of judgment on a separate paper handed to the clerk for entry in the order book conforms to the Kentucky practice "as near as may be," as required by Rev. St. § 914 (Comp. St. § 1537), without signing the entry on the order book, in view of the impracticability of signing the order books kept at the different places at which court is held, and also in view of section 918 (section 1544), authorizing District Courts to make rules regulating their own practice.

3. **Courts** ⊃339—**State practice, to which federal court must conform, contained in state Code of Practice.**

   In Kentucky, the practice, pleadings, and forms and modes of proceeding in civil causes, to which federal courts are required to conform as near as may be by Rev. St. § 914 (Comp. St. § 1537), are those prescribed by the Kentucky Civil Code of Practice.

4. **Courts** ⊃354—**Statute requiring signing of proceedings by judge not binding on federal courts.**

   Ky. St. § 378, which is contained in a chapter devoted to the duties of the clerk of the court, and which provides that the proceedings of each day shall be drawn up from the minutes in a plain, legible manner and, after being corrected as ordered by the court and read in an audible voice, signed by the presiding judge, is not a part of the pleadings and practice in civil cases, to which the federal District Court is required to conform by Rev. St. § 914 (Comp. St. § 1537).

5. **Appeal and error** ⊃347(1)—**Time for taking runs from signing of judgment, though entry subsequently signed.**

   Where judgment was signed on June 3, 1919, and handed to the clerk for entry in the order book, but several months later the order book was signed by the judge as a precautionary measure, the six months after entry of the judgment, allowed by Act March 3, 1891, § 11 (Comp. St. § 1647), for suing out a writ of error, ran from June 3, 1919.

At Law. Action by the Ellicott Machine Corporation against the Vogt Bros. Manufacturing Company. On petition for allowance of writ of error. Petition denied.

Judgment affirmed (C. C. A.) 267 Fed. 945.

Humphrey, Crawford, Middleton & Humphrey, of Louisville, Ky., for plaintiff.

Barret, Allen & Akinson and Helm Bruce, all of Louisville, Ky., for defendant.

WALTER EVANS, District Judge. The trial of this case was concluded at the last March term. The jury returned its verdict on June 3, 1919, the judgment of the court thereon in the regular course was drawn up on a separate paper, was then signed by the judge and

---

⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

passed to the clerk, with directions to enter it. It was then and there entered upon the order book of the court, and is as follows:

No. 283.

In the District Court of the United States,
for the Western District of Kentucky.

Ellicott Machine Corporation, Plaintiff, v. Vogt Brothers Manufacturing Company, Defendant.

Judgment.

This cause coming on again this day for hearing, the jury appeared and also the parties by their respective counsel. The jury, after being instructed by the court, retired to their room to consider of their verdict, and returned into court the following verdict:

"We, the jury, find for the plaintiff for the sum of $17,440.00 damages— $1,532.40 advanced money. P. I. Burks, Foreman."

Pursuant to the foregoing verdict, it is now ordered, considered, and adjudged by the court that the plaintiff, Ellicott Machine Corporation, do recover of the defendant, Vogt Brothers Manufacturing Company, the sum of $18,972.40, with interest thereon at the rate of six per cent. per annum from this 3d day of June, 1919, until paid, and their costs herein expended, as the same may be properly taxed by the clerk.

Time is given the defendant to and including September 15, 1919, to prepare and tender its bill of exceptions herein.

June 3, 1919. Walter Evans, Judge.

On the 15th day of September, 1919, the defendant filed its assignment of errors over the signatures of its counsel. Its closing paragraph was in this language:

"Wherefore the defendant prays that the judgment of the court entered herein on the 3d day of June, 1919, be reversed."

It also tendered its bill of exceptions, but action upon it was postponed from time to time upon the agreement of the parties, as shown by orders entered of record. On January 15, 1920, the defendant, in a written motion filed and entered of record, asked the court "to proceed to settle the bill of exceptions heretofore tendered herein." To this motion plaintiff filed objections, based upon the alleged ground that, the defendant having delayed more than six months from the date of the judgment to sue out a writ of error, the settling of the bill of exceptions would be futile. After much argument this objection was overruled, as not bearing upon the mere motion to settle the bill, which was all that was then before the court. The effect to be given to it when settled was not under discussion, and was not for us, but for a higher tribunal.

[1] A settlement of the bill of exceptions had not been reached, when, on January 27, 1920, the defendant filed a petition asking for the allowance of a writ of error to the Circuit Court of Appeals. To this the plaintiff objected. Ordinarily a writ of error is likely to be granted as of course, thereby leaving the question of its jurisdiction to be determined by the appellate tribunal; but the plaintiff has raised the question here, thus making it necessary for us to determine whether the defendant has the right to the writ. This follows from section 1 of rule 13 prescribed by the Circuit Court of Appeals of this Circuit (202 Fed. viii, 118 C. C. A. viii) which is as follows:

"An appeal from or writ of error to a District Court in the cases provided for in sections 128, 129 and 130 of the Judicial Code approved March 3, 1911, may be allowed in term time or in vacation by the Circuit Justice, wherever acting, or by any Circuit Judge acting within the circuit, or by any District Judge acting within the district where the case was heard and authorized to hold court in that district; and the proper security may be taken and the citation be signed by him and he may also grant a supersedeas and stay of execution or of proceedings pending such a writ of error or appeal."

The controlling statute of the United States in this situation is section 11 of the act approved March 3, 1891 (26 Stats. 829 [section 1647, 3 Comp. Stats. 1916, p. 3266]), which reads thus:

"No appeal or *writ of error* by which any order, *judgment*, or decree may be reviewed in the Circuit Court of Appeals under the provisions of this act shall be taken or sued out except *within six months after the entry of the order, judgment*, or decree *sought to be reviewed*: Provided however, That in all cases in which a lesser time is now by law limited for appeals or writs of error such limits of time shall apply to appeals or writs of error in such cases taken to or sued out from the Circuit Courts of Appeals."

This statute (the specially applicable clauses of which we have italicized) has been construed by the Supreme Court in Old Nick Williams Co. v. United States, 215 U. S. 541, 543, 544, 545, 30 Sup. Ct. 221, 54 L. Ed. 318, and its opinion and those therein referred to, including that of the Circuit Court of Appeals in that case (152 Fed. 925, 82 C. C. A. 73), leave nothing to be said, except that it is explicitly ruled that the courts have no power to extend the time fixed by the statute.

Nor may we forget that in cases like Butt v. United States (C. C.) 126 Fed. 794, Born v. Schneider (C. C.) 128 Fed. 179, and Threadgill v. Platt (C. C.) 71 Fed. 1, it was held that a judge has no right to issue a writ of error after the expiration of the six months named in the statute, though this rule is qualified where there has been a motion for a new trial which consumed part of the period.

For present purposes the facts here are: (1) That on June 3, 1919, as stated by defendant in its assignment of errors, and as is otherwise clearly shown, there was an "entry" of the judgment of the court made by its order in writing, signed by the judge and based upon the verdict of the jury then returned; (2) that no motion for a new trial, staying the operation of the judgment thus entered, was ever made, nor was any effort made otherwise to·stay it; (3) that an assignment ·of errors was filed on September 15, 1919, as provided in the judgment; and (4) that the writ of error was applied for on the 27th day of January, 1920, and at no previous time.

These undisputed facts, viewed in connection with the statute and judicial construction of its terms, demonstrate, prima facie, that the application for a writ of error should have been made prior to December 4, 1919. That was not done. The failure to do it, considered with reference to the facts just stated, and those which will presently be mentioned, would seem clearly to bar the defendant's right to the writ. Notwithstanding this almost necessary result, the defendant, as we have seen, filed a petition for its allowance; and it must not be forgotten that certain rights of the plaintiff may have matured, of which it

cannot lawfully or justly be deprived by any delay of the defendant or of the court. Nor, when the time of asking for a writ of error has expired, can it be arrested or called back by any order of the court. 215 U. S. 544, 30 Sup. Ct. 221, 54 L. Ed. 318, citing Credit Co. v. Arkansas Central Railway, 128 U. S. 261, 9 Sup. Ct. 107, 32 L. Ed. 448. Otherwise, said the court, the law which limits the time within which appellate proceedings can be taken would be a dead letter. Meantime, as we have seen, on the 15th of September, 1919, the defendant filed its bill of exceptions to what had taken place at the trial, and on January 15, 1920, in a written motion, had asked the court "to proceed to settle the bill of exceptions heretofore tendered herein."

The argument upon plaintiff's objections to settling the bill of exceptions took a very wide range, extending, not only to the question of the futility of settling the bill of exceptions, but to the time in which a writ of error might be allowed, including a discussion of the effect of the statement, then in that way only and for the first time made, that the judge had not signed on the order book the record of the proceedings of June 3, 1919. This argument took place on January 20, 1920. After consideration, the court, while overruling, upon the grounds indicated, the objection made to settling the bill of exceptions, contemplated the possibility that the plaintiff might desire to sue out a writ of fieri facias to enforce collection of its judgment, entry of which had been made on June 3, 1919, and might, in such event, be embarrassed by the contention that the record of that day's proceedings had not been signed on the order book by the judge. To provide against delays or other possible embarrassments on a mere collateral contingency or issue like that, in the event of a proceeding to enjoin the execution of such a writ, and for no other reason, the judge, as then explained, made and signed the following entry on the order book, viz.:

"For special reasons the record of the proceedings of June 3, 1919, is signed this January 22, 1920."

In doing this upon these special reasons the court in no way intended to disregard or to set aside its unwritten rule, adopted in April, 1899, and acted upon ever since, not to sign on the order book the record of the proceedings of each day. This construction of the law and this course were decided upon after careful consideration, and have been adhered to ever since. No case taken in the meantime from this to a higher court has ever been based upon any condition of the record which did not conform to that construction. All entries upon what the Kentucky practice generally calls the order book are made under the court's directions. They constitute its records of all its proceedings. Those records are in the custody of the clerk, and must be and are regarded as authentic, and open to everybody interested, and the rule of the court in respect to not signing the record of each day's proceedings is known to all who are presumed to know or to have notice of the public records of the courts. This is the first instance in which the rule of the court in this respect has been called in question

in the nearly 21 years of its existence. In this instance the question has ·been raised only in the way indicated, viz., ·in an argument on a motion to settle a bill of exceptions, and which argument spread over to objections to granting a writ of error as out of time. ·

In view of that discussion, it becomes appropriate to vindicate the authenticity of the whole body of our records by, stating our construction in 1899 of the law in respect to signing our records on the order books and the grounds upon which that construction is based, for, as is well known, no federal 'statute in terms requires it, nor did any practice at common law do so.

·  Previous to April, 1899, four different places had been designated by law for holding terms of the District and Circuit Courts of the United States in the District of Kentucky, namely, Louisville, Covington, Frankfort, and Paducah, each located many miles from the other. Each of these had a separate clerk and a separate clerk's office. All of the four were presided over by a single judge, and the terms were continuous from the beginning of ·one to the beginning of another at each of the places named. Business might be done at each on each 'day, and in fact was largely so done, and the judge, at whichever of these places he might be, could properly direct the entry of orders or judgments at any of the other places, because he was in the district and not disabled by being out of it. For this and other reasons equally cogent, and in view of the impossibility at the close of each day's work of drawing up, entering, and signing the day's · proceedings on all the order books, it was obviously absurd to attempt anything of the kind, and especially as there was as much obligation to sign on the order book the record of each day's proceedings at each and all of the four places referred to as there was to sign it at any one of them. When the judge was present at these several places, holding terms, the business of each day was large, and many times it was not possible for the clerk to get all the appropriate entries made on the order book ·during the day, or at any time before the judge would be compelled to leave that place for some other at which work was to be done. It would have kept the court's order book at each of those cities in constant journeyings to the judge. Only an aeroplane service could have met the requirements of such a situation, and none was at our command.

[2] The situation thus confronting us in April, 1899, demanded a careful consideration of all applicable provisions of law. The result of 'this was a construction then made that the course then determined upon and ever since pursued was and is as "near as may be" in conformity with the Kentucky "practice, pleadings, and forms and modes of proceeding" in civil causes, as these words are properly construed; absolute conformity in many respects being entirely impossible or impracticable. That was all we were required to do under any reasonable or practicable construction of those laws, and furthermore was subject to our power under the last clause of section 918 of the Revised Statutes (Comp. St. § 1544), hereinafter set out. That course thus determined upon has been followed ever since, as the records ·show, and as ·all· must be presumed ·to know. · It requires: always the

previous signing by the judge of the judgments entered; that signature being put upon the judgment as drawn up on a separate paper, which paper, thus signed, was then passed to the clerk by the judge, to be entered on the order book. That paper is filed with the other papers in the case, and thereafter remains a part of the record therein, showing to all the exact situation with respect thereto.

However, since our construction of the statutes, we have had a habit of formally signing afterwards the record of the proceedings of the last day of each term at each place where they were held. This was not required, but it was not regarded as inappropriate to do this, as it was suggestive of a formal rounding out and winding up of all the entries that had been made during the entire term by the judge who signed.

On July 1, 1901, Kentucky was divided into two districts, but that division did not change the situation nor our course under our construction of its requirements, as there were still, in our district, four widely separated places, in each of which two continuous terms of court were held in each year, viz., Louisville, Paducah, Owensboro, and Bowling Green, at each of which was a clerk's office in charge of a deputy of the clerk at Louisville.

Section 914 of the United States Statutes at Large, vol. 17, p. 197 (section 1537, Comp. Stats. 1916, vol. 3, p. 2912), is and has long been in the following language:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the [Circuit and] District Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such [Circuit or] District Courts are held, any rule of court to the contrary notwithstanding."

Undoubtedly this section provides substantial rights for the litigants upon both sides of an action at law. That general proposition probably has never been questioned, though sometimes the courts may differ as to what the practice and modes of proceeding of a particular state may be; but, when they are ascertained, the result is cared for, as near as may be, by the statute just cited, and known as the Conformity Act, as modified by section 918.

[3] Our view in this connection explicitly was and still is that the "practice, pleadings, and forms and modes of proceeding" in civil actions in Kentucky are those prescribed by the Kentucky Code of Practice. But in any event the court should construe section 914, R. S., in connection with section 918, R. S., which is as follows:

"Sec. 918. The several * * * District Courts may, from time to time, and in any manner not inconsistent with any law of the United States, or with any rule prescribed by the Supreme Court under the preceding section, make rules and orders directing the returning of writs and processes, the filing of pleadings, the taking of rules, the entering and making up of judgments by default, and other matters in vacation, and otherwise regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

See Atchison, etc., Co. v. Hamble, 177 Fed. 644, 652, 101 C. C. A. 270; Van Doren v. Pennsylvania R. R., 93 Fed. 260, 269, 35 C. C. A.

282; Importers', etc., Bank v. Lyons (C. C.) 134 Fed. 510, 572; Ewing v. Burnham (C. C.) 74 Fed. 384, 385. As to the principle which applies to and upholds as binding a long-established practice, even if no written rule of the court has been formulated, see Detroit Heating & Lighting Co. v. Kemp (C. C.) 182 Fed. 847.

The rule we adopted, as stated, in 1899, and which has ever since been followed, would quite fully meet the intention of the statutes, and at the same time would as·adequately authenticate our judgments as would any signing of the record of the day's proceedings on the order book; such authentication at last being the essential result to be obtained. That the judgment in this case was adequately authenticated is clearly shown by the statement of the defendant in the last sentence of its assignment of errors, which we have already copied; and, indeed, this circumstance, coupled with the fact that pursuant to its requirements the defendant filed its assignment of errors and tendered its bill of exceptions on September 15, 1919, might well be construed as a waiver by it of the objections it now urges.

The present Code of Practice of Kentucky has been in force since January 1, 1877, as provided in its last section, namely, section 839. A careful, but brief, analysis of the provisions of the Code becomes most important, inasmuch as it will accurately develop the exact situation and bring into view the precise questions to be determined.

At the outset, in title 1 it recognizes the distinction between common-law actions and equitable actions. The first are ordinary actions, and the second equitable actions, though both are called "civil actions." In section 4, embraced in title 2, it provides that there shall be but one form of civil action. Title 3 prescribes who shall be made parties to such actions; title 4 regulates the manner of commencing a civil action by the filing of a petition, stating the facts, and also regulates the manner of issuing and serving process; title 5 regulates the venue of civil actions; title 6 prescribes what actions may be joined; title 7 regulates the pleadings and the rules applicable thereto; title 8 provides for provisional remedies, that is, attachments, injunctions, etc.; and title 9 prescribes the rules for the trial of civil actions, namely, jury trials in common-law actions, and trial by the court of equity cases. Section 368, embraced in title 9, reads thus:

"A judgment is a final determination of a right of a party in an action or proceeding."

Section 384 is as follows:

"After a jury trial, the clerk shall enter judgment in conformity to the verdict, unless it be special as to one or more questions of fact, or unless the court reserve the case for consideration."

Section 390 regulates the manner of entry of such judgment on the record in this language:

"The judgment must be entered on the order book and specify clearly the relief granted or other determination of the action."

Finally section 838 in unambiguous terms declares that:

"The provisions of this Code shall regulate pleadings and practice in civil cases commenced hereafter in courts which now exist, or [which] may here-

after be created; and. as to such cases, laws within the purview of those provisions are repealed; and this repeal does not revive any law which may have been repealed by laws which are hereby repealed."

In short, the Code of Practice of this state, in express and unmistakable terms, regulates the practice, pleadings, and modes of proceeding in a common-law action from its commencement to its termination by the entry of the judgment on the order book of the trial court, as directed by sections 384, 390. The practice and proceedings thus prescribed, not only fully regulate that practice, but have continuously done so without change since January 1, 1877.

True, the words "forms and modes of proceeding" are not found in that collocation in section 838 of the Kentucky Code, but necessarily they are included in all that is meant by the phrase "regulate pleadings and practice in civil actions," prescribed in that section. Those words are ample to meet the provisions of section 914, R. S., though that section uses words sufficiently general to reach all the forms of expression that might be used in the Codes of the many states of the Union.

The Kentucky Code of Practice in no way requires the state court judges to sign each day's proceedings, though it may be remarked that the Code of Practice of Louisiana did require such action, and hence the decision of the Supreme Court in Yznaga v. Harrison, 93 U. S. 233–235, 23 L. Ed. 892. That requirement of the Code of Practice of Louisiana apparently was overlooked by the District Court in that case with the result that its judgment was reversed by the Supreme Court. That was the precise case decided by the Supreme Court, and the well-established maxim is that the language of the court's opinion in that case must be limited to the very case under discussion. See Pollock v. Farmers' Loan & Trust Co., 157 U. S. 574, 15 Sup. Ct. 673, 39 L. Ed. 759, where reference was made to the opinion of Chief Justice Marshall in Cohen v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257.

Practically the same propositions apply to the case of Morrison v. Bernards Township (C. C.) 35 Fed. 400, 402. At the time of that decision the state of New Jersey had no Code of Practice by that name, but had statutory provisions intended to cover exactly the same field. Those provisions were made in the act approved March 27, 1874 (Rev. St. 1874, p. 594), which specifically and in terms regulated the practice in the courts of law—those provisions being a codification of numerous statutes previously enacted regulating practice in those courts. Thus it will be seen that these provisions were in effect the New Jersey Code of Practice, though not so called. Hence these statutory provisions in New Jersey were the precise equivalent of a Code of Practice, and were so intended. Included in this system of practice thus created was one provision which required the judge to approve and sign the record of the proceedings on the order book.

[4] In Kentucky, however, the Legislature found it wise to meet and provide for certain conditions other than those relating to "pleadings and practice in civil cases" which were fully regulated by the Code of Practice, and to that end it devoted one entire chapter (the

twenty-first) of the Kentucky Statutes, containing 17 sections (372 to 388, inclusive) to prescribing, generally, the duties of the clerks of the various courts. An analysis of its various sections may elucidate the proposition before us, and certainly will show that it relates, for the most part, to matters entirely outside of lawsuits of any kind.

Section 372 requires every clerk to take an oath in the form therein prescribed. Section 373 prescribes the form of bond each clerk is to give. Section 374 requires each clerk to deliver to his successor the records of his office. Section 375 requires a record to be made of executions issued and the returns thereon. Section 376 requires a record of these matters to be kept by every clerk. Section 377 forbids the clerk of an inferior court to take the records of his court outside of his county, with certain specified exceptions to that rule. Section 378 provides that—

"The proceedings of each day shall be drawn up by the clerk from his minutes in a plain, legible manner, which, after being corrected as ordered by the court, and read in an audible voice, shall be signed by the presiding judge."[1]

Section 379 requires every clerk to indorse certain memoranda on the inner envelope to be filed with the papers. Section 380 authorizes the clerk to administer certain oaths. Section 381 makes it his duty to issue subpœnas under certain circumstances. Section 382 requires him to certify and affix the seal of his office to soldiers' claims on the government in certain circumstances. Section 383 requires clerks to enter witness fees on the proper book with the taxation of costs. Section 384 requires the clerk of one of the courts without unreasonable delay to discharge certain duties with respect to the tax books. Section 385 requires the clerk to make a report of suits and indictments. Section 386 requires him to keep a general index. Section 387 provides that—

"The failure of a clerk to discharge the duties, or any of them, required by law, shall, in addition to any other penalty imposed, be a contempt of court, and may be punished accordingly."

Section 388 authorizes the clerk to procure the books needed for his office, and prescribes how payment therefor shall be made.

This analysis, bringing into close view all the provisions of the chapter, unmistakably shows that it was the intention of the Legislature to regulate, in some detail, the personal duties of the clerk in the administration of the affairs of his office and nothing else, though in one respect that administration by the clerk was required to be verified by the signature of the judge, and to this extent it regulated the administration by the judge of certain of the duties of his office also. These provisions were not to regulate the proceedings in litigation between parties. They were not prescribed by the Code of

[1] The substance of this legislation has been on the statute books of Kentucky for nearly a century. Its history makes its purposes altogether clear. It had its origin in the exposure of the acts of clerks who had committed serious frauds or at least wrongs which were the subjects of judicial condemnation in cases like Commonwealth v. Chambers, 1 J. J. Marsh. 108, and others which might be cited.

Practice, but were regulations to be observed by the clerk in doing his work, and to secure the correctness of that work the minutes of the court's records as kept by him were required to be written out, read in an audible voice, and signed by the judge on the order book. If the latter was not done, the record was not verified, and counted for nothing as part of the state court's records. This requirement was entirely outside of anything with which the parties had to do in practicing their cases. In other words, it was entirely outside of the practice and proceedings in a case inter partes. The parties to the action would have no control over these things. Our view was and clearly is that these provisions are not and were not intended to be embraced in the Code of Practice, which regulates the "practice and pleadings in civil cases," as between the parties thereto, within the contemplation of section 914, R. S.

It may serve to make the matter clearer if we analyze section 378, regulating in one respect the official conduct of the clerks. That section provides (1) that the proceedings of each day shall be drawn up by the clerk from his minutes, (2) in a plain, legible manner, (3) and after being corrected as ordered by the court, must (4) be read in an audible voice, and then (5) be signed by the presiding judge. Is it not obvious that this section was meant to secure the proper discharge by the clerk of his duties as such? Would the proceedings be void if the handwriting of the clerk was not plain and legible, or if the minutes were not read in an audible voice?

Manifestly these were not requirements that affected anything except the clerk's work, which, as such, must come up to the prescribed standard, and then be authenticated by the judge's signature by which the clerk's work was approved. This, we may repeat, illustrates strongly the proposition that none of the requirements of that section were intended to do anything except to secure the due administration by the clerk of the duties of his office and the verification of that fact by the judge's signature. After the clerk had discharged his duty the signature of the judge authenticated the fact.

In many cases in Kentucky, in construing section 378 of the Kentucky Statutes, it has been held that unless the presiding judge signs the record of the day's proceedings as drawn up by the clerk, including the judgments in any cases heard, all that was done on that day becomes ineffective and cannot be enforced. This is because that section, being a positive law of the state, and as construed by her courts, explicitly requires that course to be pursued by her judges and her clerks. But that provision of the law of the state has no force as a law of the United States, unless the duty of the judge to sign the record of the entire day's proceedings comes fairly and properly within the terms of section 914 of the Revised Statutes of the United States as parts of the "practice and pleadings in civil actions" prescribed by the law of Kentucky. We have shown that that is not the case, because those matters are fully regulated by the Code of Practice from the commencement of the action to its close. This being so, its provisions were not intended to be affected by section 378 of the Kentucky Statutes which had reference to entirely different mat-

ters, namely, the personal conduct of the clerk and judge in recording and signing the record of the entire proceedings of the day, and not to their conduct in the trial of any given case.

At this point it may be observed that a most suggestive analogy is afforded by the thoroughly established rule in the federal courts that a judge in his personal administration of the duties of his office is not bound by any law of the state in which he sits, because that work of the judge does not come within the purview of the provisions of section 914. This general rule, especially as it regards the manner of charging juries (for example), has been announced in many cases. Lincoln v. Power, 151 U. S. 436, 442, 443, 14 Sup. Ct. 387, 38 L. Ed. 224; Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286; Indianapolis, etc., R. R. v. Horst, 93 U. S. 291, 23 L. Ed. 898.

Of course, if section 378 of the Kentucky Statutes had come within the purview of section 838 of the Kentucky Code of Practice (as did the Code provisions in Louisiana and New Jersey in the cases already referred to) it might possibly be different. But for reasons deemed sufficient by the Legislature, section 378 of the Kentucky Statutes was a separate and independent enactment to meet an entirely different need. It clearly was no part of the practice and pleadings of the parties to a civil action.

[5] After very careful consideration we have reached the conclusion that the period of six months from the entry, on June 3, 1919, of the judgment herein expired with December 3, 1919, and that the subsequent signing on January 22, 1920, on the order book of the court, of the record of the proceedings of June 3, 1919, upon the special reasons stated therefor, in no way changed the rights of either of the parties.

It is neither our habit nor our desire at any time to prevent appellate proceedings upon our judgments, but in this instance we are left no alternative but to deny the writ of error sought by defendant's petition therefor, and accordingly that is done.