## Derr, Appellant, *v.* Lehigh Valley R. R. Co.

*Negligence—Jurisdiction—Injury in one state, death in another—Risk of employment.*

Where a person is injured in New Jersey, and subsequently dies of his injuries in Pennsylvania, no action can be brought in Pennsylvania, by the widow of the deceased, suing for herself and her children, unless there was a negligent act or omission in Pennsylvania which was directly responsible for the injury received in New Jersey.

Plaintiff's husband, a locomotive engineer, was injured in New Jersey by the derailment of his engine running into a snow drift in a deep cut. He was removed to Pennsylvania where he died, and suit was brought in Pennsylvania by his widow for the benefit of herself and children. The evidence showed that deceased had charge of one of four engines coupled together, which had been sent out from Easton, Pennsylvania, to New Jersey, to remove snow drifts from cuts. The manner in which the train was made up, equipped and manned at Easton showed the purpose for which it was intended. Hands employed on the train were informed that the train was intended to open the road, although there was no direct proof that deceased received this information. Deceased had been employed on the division where the accident occurred for four years. *Held*, that the evidence failed to disclose negligence on the part of the railroad company, and that the risks involved in the work of opening the road were intelligently assumed by deceased.

Argued March 8, 1893. Appeal, No. 137, Jan. T., 1893, by plaintiff, Anna M. Derr, suing for herself and child, from order of C. P. Northampton Co., April T., 1889, No. 30, entering compulsory nonsuit. Before Sterrett, C. J., Green, Williams, McCollum and Thompson, JJ.

Trespass for death of plaintiff's husband. Before Schuyler, P. J.

On the trial there was evidence to the following effect: On the evening of March 13, 1888, after the great "blizzard" of that year, John Donnelly, superintendent of the New Jersey division of defendant's road, sent the following telegram to J. I. Kinsey, master mechanic, at South Easton, Pa.:

"New Market, N. J., 3–13–'88.

"J. I. K.: I would be glad to have you furnish all the men you can spare, as soon as the wind goes down, to help open the road. It will be necessary to shovel all the cuts from Phillips-

burg to New Market, and it will possibly be several days before we get our tracks open. They should be sent with provisions enough for two days at least, and have four engines coupled together, two turned each way, with jacks and blocking, etc. All our efforts have been fruitless so far, and we make no move until the wind goes down. Engines 308 and 21 are covered up two miles west of here, and engines 3 and 4 about half buried just west of the station. They are in good order and ready for service when dug out. I don't know the condition of the other engines snowed up, as we can't reach them."

Mr. Kinsey, as master mechanic, hired and discharged the engineers and firemen at his discretion. He testified that such telegrams were given to the call boy to deliver to the night engine dispatcher and foreman of the round house, Josiah Steiner, who would give them to the engineers; that this was the only way in which an engineer could go out of the round house, unless running on regular schedule. Steiner ordered the engines out, and one Turner was given charge of the laborers. Turner did not know the contents of the order.

Steiner's testimony in full was as follows:

" Q. Mr. Steiner, were you in the employ of the L. V. R. R. Co. in March, 1888? A. Yes. Q. What position did you hold then? A. Night foreman. Q. What were the duties of night foreman—what did you do? A. Getting crews out and engines out on their places on the road, and whatever I was ordered to do. Q. Do you remember that on the night of the 13th an order was in the office of the master mechanic from James R. Donnelly, superintendent of the Easton & Amboy division, with reference to four engines to be sent down that division? A. No; I don't know anything about it. Q. How did the orders come to you? A. They were left in the book as a general thing. Q. Look at page 42 of this book and see whether you saw that order that night—is that the book you refer to? A. No. Q. Is there another book in the office? A. Yes; a big, heavy book. Q. Do you remember giving orders to the engineers of those four engines to go down on the Easton and Amboy division to go down that morning? A. I couldn't tell who they were any more. I was ordered to get out the crews. Q. Did you get out the crews? A. Yes. Q. For the four engines that went down on the Easton and

Amboy road on March 14, 1888? A. Yes. Q. Were you there when they started out? A. That I couldn't tell—whether they started out when I was there, or whether it was later. I couldn't say."

The engineers reported at the station at Easton, where N. A. Fulmer was in charge as train dispatcher. He had received a telegram from Donnelly, but it did not appear whether he gave copies to the engineers. Further evidence of orders is recited in the opinion of the Supreme Court. The engines proceeded down the road until they reached a cut twelve or fifteen feet deep between Three Bridges and Neshanic in New Jersey. Here the engines ran into the drift, were overturned and plaintiff's husband received injuries from which he died the day following in Pennsylvania.

The court entered a nonsuit and afterwards refused to take it off. Plaintiff appealed.

*Error assigned* was refusal to take off nonsuit.

*W. C. Shipman* and *A. B. Howell*, for appellant.—The prominent fact in the case is, that the company undertook to run a train upon its road with the knowledge of an obstruction of unusual and extraordinary danger, and that thereby the usual and ordinary risk of the service was increased without the knowledge of the deceased. This makes the company liable for negligence: Mensch v. R. R., 150 Pa. 598; Kehler v. Schwenk, 151 Pa. 506; Wood on Railroads, 1493; Wood on Master and Servant, sec. 354; Rummel v. Dilworth, 131 Pa. 519; Ross v. Walker, 139 Pa. 48; Railway v. Keenan, 103 Pa. 124; R. R. v. Bell, 112 Pa. 400; Tissue v. R. R., 112 Pa. 91; Lewis v. Seifert, 116 Pa. 628; Reiser v. R. R., 152 Pa. 38; Ross v. Walker, 139 Pa. 48.

The record shows that defendant was guilty of negligence in this state in dispatching several engines, constituting a train, without informing the crews of a danger which was sure to subject the deceased to peril, unusual, extraordinary and unknown to him. This was an overt act in Pennsylvania, as the superintendent had given this information to no others, and after the departure of the train from Easton the act of omission was complete. The subsequent infliction of injury or the actual

violence was simply and only result and sequence. Our position is that these facts bring the case within the statute of this state, giving the right of action for death by negligence.

In Usher v. R. R., 126 Pa. 206, the whole occurrence was in New Jersey, namely, alleged negligence, infliction of violence, and death.

The only elements that constitute the cause of action are negligence and death, and that the matter of injury to the deceased is not a factor, has been twice pointedly decided by this court: Mann v. Wieand, 4 W. N. 6; Books v. Danville Boro., 95 Pa. 158.

In the following cases, the death happened within and the negligence happened without the states, and it was held that negligence was the cause of action: R. R. v. Cutter, 16 Kan. 568; McCarthy v. R. R., 18 Kan. 46; Needham v. R. R., 38 Vt. 294.

At common law the principle is fundamental that the cause of action is always that cause which produces the injury, without regard to the number of intervening conditions. It is the proximate cause, causa causans, which constitutes the gravamen, the gist and subject-matter of the action: Scott v. Shepherd, 2 W. Bl. 892; 1 Smith's L. Cas. 797; Cotteral v. Cummins, 6 S. & R. 343; Hughes v. McDonough, 43 N. J. L. 459; Dalton v. Favour, 3 N. H. 465; Blin v. Campbell, 14 Johns. 432; Bishop's Cr. L. 65; Wharton's Cr. L. (9th ed.) 302; State v. Babcock, 30 N. J. L. 29.

In purely local actions, where the cause arose in one county and the infliction of injury was in another, this court held that the venue could be laid in either: Oliphant v. Smith, 3 P. & W. 180; Com. v. Lyon, 1 Pa. L. J. 497.

The same principle applies to a cause of action in one state, or nation and the infliction of injury in another, as the following cases of local action show: Mannville Co. v. Worcester City, 138 Mass. 89; Thayer v. Brooks, 17 Ohio, 489; Armendiaz v. Stillman, 54 Tex. 623; Rundle v. Del. & Rar. Canal, 1 Wall., Jr., 275; Foot v. Edwards, 3 Blatch. 310; Stillman v. Mfg. Co., 3 Woodb. & M. 538.

*Edward J. Fox* and *William Fackenthall,* for appellee.—The action is purely statutory and our statutes have no extra terri-

torial force.   They impose no burden upon any one for acts done or committed beyond the state line : Usher v. West Jersey R. R., 126 Pa. 206 ; Whitford v. Panama Ry., 23 N. Y. 484 ; Woodward v. R. R., 10 Ohio St. 121 ; Richardson v. R. R., 98 Mass. 85 ; Com. v. Lacy, 3 Ga. 461 ; Anderson v. R. R., 47 Wis. 321 ; McCarthy v. R. R., 18 Kans. 46 ; Maunville Co. v. Worcester, 138 Mass. 89.

The injury having been inflicted without the state, the fact that decedent died here does not bring the case within our statute : Act of April 26, 1855, P. L. 309 ; Books v. Borough, 95 Pa. 158 ; Mann v. Wieand, 4 W. N. 6 ; Needham v. Grand Trunk R. R., 38 Vt. 295 ; Campbell v. Rogers, 2 Handy, 111 ; Worley v. C. H. & D. R. R. Co., 1 Handy, 481.

The fact that the injured person died within the jurisdiction of the state does not bring within the statute injuries which were inflicted beyond the state : McCarthy v. Chicago & P. R. R., 18 Kans. 46 ; Crowley v. Panama R. R., 30 Barb. 99.

The burden of proving defendant's negligence affirmatively is on the plaintiff : McCully v. Clarke, 40 Pa. 399 ; Borough v. Neff, 102 Pa. 474.

Decedent was guilty of contributory negligence, if he left the round house without a copy of the written instructions.

A corporation is not liable for damages arising from an accident, unless its negligence was the proximate cause of the injury : Allegheny v. Zimmerman, 95 Pa. 287.

Whether there was negligence on the part of a vice principal in Pennsylvania or not, appellant has failed to show that it was the proximate cause of the accident and that decedent was free from concurrent negligence.

OPINION BY MR. JUSTICE McCOLLUM, November 13, 1893 :

Conrad Derr, a locomotive engineer, died on the 15th of March, 1888, from an injury he received the preceding day while in the service of the Lehigh Valley Railroad Company. His widow and children, alleging that his death was due to the negligence of the defendant company, brought this action to recover compensation for their loss.   It was shown on the trial that the injury was received in a cut on the Easton and Amboy division between Three Bridges and Neshanic in New Jersey, and that the death as a result of the injury occurred in North

ampton county, Pa. It appears to have been conceded that in order to recover in this suit it was necessary to show an act of negligence in Pennsylvania, which was the proximate cause of the injury received in New Jersey. The learned judge of the court below being unable to discover such negligence in the testimony submitted in support of the action, entered a compulsory nonsuit, and from his denial of the motion to set it aside this appeal was taken.

A considerable portion of the argument contained in the appellant's paper book is devoted to a discussion of the question of jurisdiction. It assumes that the deceased was sent out upon the road on the 14th of March without sufficient information concerning the obstructions in his path and the work he was to do, and that the failure of the company to give him such information before he left Easton was the proximate cause of the injury which resulted in his death. It will thus be seen that the negligence complained of was an omission of duty in Pennsylvania which, it is claimed, was the sole cause of the accident in New Jersey. The principle settled in Usher v. Railroad Co., 126 Pa. 206, is not disputed. It that case the negligence, the injury and the death were in New Jersey, and the right of action for the benefit of the widow and next of kin was given by the New Jersey statute to the personal representatives of the deceased. A suit to enforce this right was brought in Pennsylvania by the widow for the benefit of herself and child, and it was held that as the right was statutory it must be asserted in the name of the persons to whom it was given. But Usher v. Railroad Co. is not decisive of the question raised in this case, if the appellant's contention in respect to the negligence and the proximate cause of the injury is well founded. It must be remembered, however, that unless a negligent act or omission in Pennsylvania, which was directly responsible for the injury received in New Jersey, is shown by the evidence, there is no question of jurisdiction to be considered. If the evidence is insufficient to warrant an inference of such negligence, the nonsuit, on the authority of Usher v. Railroad Co., supra, must be sustained.

We turn then to the testimony submitted by the appellant to discover, if we can, what negligent act or omission of duty the defendant company is chargeable with in connection with

this unfortunate accident, and, if such act or omission be found, to ascertain where it occurred. It seems that on the 13th of March, 1888, Donnelly, the superintendent of the New Jersey division, telegraphed from New Market to Kinsey, the master mechanic at Easton, that he would be glad to have all the men that could be spared " to help open the road; " that it would be necessary to shovel all the cuts between Phillipsburg and New Market, and that it might be several days before the road could be opened. He also said, in his telegram, that the men " should be sent out with provisions enough for two days at least, and have four engines coupled together, two turned each way, with jacks and blocking," etc. In compliance with this request, or order, a train was made up the next morning consisting of four engines and two tool cars, and having upon it four conductors, four engineers, four firemen and two hundred laborers. It also carried provisions for two days, and shovels and other appliances suitable for the work of clearing the tracks of snow and other obstructions. It does not admit of reasonable doubt that every man on this train knew that the road was so blocked by snow drifts that the regular passenger and freight trains could not be moved over it, and that his train was organized for the express purpose of opening the road for them by removing the snow from the tracks. The manner in which the train was made up, equipped and manned was in itself notice of the purpose for which it was sent out, of the obstructions to be met and overcome, and of the kind of work to be done by the men upon it. In addition to the notice thus conveyed, we learn from the evidence that Isaac Pixley, who was Derr's fireman at the time of the accident, was directed to go out " with three other engines and open the road; " that Charles Kleckner, who was the engineer on the locomotive next to Derr's, received orders to " proceed to Phillipsburg and help clear the snow," and that William Laros, one of the conductors, was ordered " to report and go out with the snow trains." We learn, too, that, while at Phillipsburg, the men in charge of the train consulted as to the order in which the engines should move, and " came to the conclusion that it would be better to put the heavier engines on the lead on account of getting through the snow." In short a careful study of the whole testimony forces the conviction that none knew better than the trainmen the condition of

the road, the nature of the work on which they entered and the dangers incident to it. Most of them had been in the service of the defendant company many years, and were familiar with every part of the road on which their train was running at the time of the accident. They knew where all the cuts were, and from their experience and observation in railroading were aware that the greatest obstructions created by the snow storm would be found in them. It may be conceded that they did not know the exact location and size of every snow drift they would have to remove or cut a way through in opening the road. This was information which could only be obtained in the prosecution of the work for which they were sent out. All that we have said in reference to the knowledge of the trainmen generally, is especially applicable to Derr, who was an engineer on the Easton and Amboy division of the road for four years. It will thus be seen that the risks involved in the work of opening the road were intelligently assumed by him. In order to recover in this action it was necessary for the appellant to show negligence on the part of the defendant company in connection with this work, and as she has failed to submit evidence which warrants an inference of such negligence, the nonsuit must be sustained.

The specifications of error are overruled.

Judgment affirmed.