JOHN E. WHITE and ANN WHITE, Appellants, v. THE RIO GRANDE WESTERN RAILWAY COMPANY, a Corporation, Respondent.

No. 1374.   (71 Pac. 593.)

**1. Constitution: Construction: Substitution of Words.**

Where one word has been erroneously used in a constitution, statute or other written instrument for another, and the context affords the means of correction the proper word will be deemed substituted.

**2. Same: "Causes of Action" Substituted for "Business:" How Construed.**

Article 8, section 5, of the Constitution, provides that "all civil and criminal business" arising in any county must be tried in such county, unless a change of venue be taken. *Held*, that the word "business" was erroneously used and that the words "causes of action" should be deemed substituted therefor. The clause, after the substitution, is still so indefinite and general as to render it necessary in each case in which the venue is made an issue to resort to the common law to determine whether the venue has been properly laid.

**3. Same: Acts Committed in Two Counties: Venue.**

Under Constitution, article 8, sec. 5. providing that all civil and criminal business [causes of action] arising in any county shall be tried in such county, unless a change of venue be taken, where plaintiffs' intestate sustained an injury through the negligence of defendant railway in one county, and died from the effects of such injury in another county, as both the alleged negligence of the defendant and the death of plaintiffs' intestate were material and traversable facts, proof of which was necessary to maintain the action, the cause of action may be said to have arisen in either county, and, under the common law, an action for death was maintainable in either county.[1]

**5. Same: Objections to Jurisdiction: Waiver.**

Under article 8, section 7, of the Constitution, the district court is one of general, original jurisdiction. The clause of the Constitution (art. 8, sec. 5) requiring actions arising in any county

---

[1] Desert Irr. Co. v. McIntyre, 16 Utah 398; 52 Pac. 628.

to be tried in such county does not affect the general jurisdiction of the district courts and, therefore, the court having jurisdiction of the subject-matter, a defendant may waive his right, under the Constitution, to have an action against him tried in the county where the cause of action arose.

**4. Same:**
   The right conferred by Constitution, article 8, sec. 5, to have an action tried in the county where it arose, is a personal privilege only, and the defendant by failing to object to the jurisdiction of the court at the former trial and by demurring to the amended complaint on a subsequent trial on other grounds, waived his right thereunder.

(Decided February 21, 1903.)

Appeal from the Third District Court, Salt Lake County.— *Hon. C. W. Morse,* Judge.

Action to recover damages for the death of the plaintiffs' son alleged to have been caused by the negligence of the defendant. From a judgment dismissing the action for want of jurisdiction, the plaintiff appealed.

REVERSED.

*C. S. Patterson, Esq.,* and *G. W. Moyer, Esq.,* for appellants.

*Messrs. Bennett, Sutherland, Van Cott & Allison,* for respondents.

### STATEMENT OF FACTS.

This is an action in which the plaintiffs sought to recover, under the provisions of chapter 6, Code Civil Procedure, damages arising from the death of their son, Thomas F. White, alleged to have been caused by the negligence of the defendant. It is stated in the second amended complaint that the alleged acts of negligence which caused the death of their son occurred in Carbon county, and that he died from the effects of

said negligent acts in Salt Lake county. The action was brought in Salt Lake county. It is admitted that the plaintiffs reside in Salt Lake county. The case was dismissed on the ground that the court below had no jurisdiction of the action.

BASKIN, C. J., after a statement of the case as above, delivered the opinion of the court.

It is provided in article 8, section 5, of the Constitution, that "all civil and criminal business arising in any county, must be tried in such county, unless a change of venue be taken, in such cases as may be provided by law." The appellants claim that under this provision the proper venue in this case is Salt Lake county, and the respondent contends that it is in Carbon county. "Business" is "a word of large signification, denoting the employment or occupation in which a person is engaged to procure a living. 'Business' and 'employment' are synonymous terms, signifying that which occupies the time, attention, and labor of men for purposes of a livelihood or for profit; a calling for the purposes of a livelihood." Anderson's Law Dict. The definitions contained in the other dictionaries and various lexicons are substantially the same as above. An action is "the legal and formal demand of one's right from another person or party, made and insisted upon in a court of justice. . . . It is an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Black's Law Dict. The constituent elements of a legal cause of action consist of a wrongful act by the defendant, or the omission by him of a legal duty which he owes to the plaintiff, and of either the material damage to the plaintiff caused thereby or of the damage which the law implies therefrom. Foote v. Edwards, 3 Blatchf. 313, Fed. Cas. No. 4908; Post v. Campau, 42 Mich. 96, 3 N. W. 272; City of North Vernon v. Voegler, 103 Ind. 314-319, 2 N. E. 821. When

however, no damage is implied by law from the wrong or the omission of the legal duty, and only trifling or immaterial damage results therefrom, the maxim, *"De minimis non curat lex,"* applies, and no cause of action arises. Suth. Dam., sec. 3; Mech. Agency, sec. 474; Cooley, Torts (2 Ed.), p. 66 et seq.; Paul v. Slason, 22 Vt. 231-238, 54 Am. Dec. 75; McAllister v. Clement, 75 Cal. 182, 16 Pac. 775; Knight v. Abert, 6 Pa. 472, 47 Am. Dec. 478. The right of action springs from the cause of action, but does not accrue until all of the facts which constitute the cause of action have occurred. The word "business" is not synonymous with the word "action," and is not an element either of a cause or right of action. Although "business" is a word of extensive signification under any legal or general definition of the term, it is meaningless in the connection in which it is used in the Constitution, and the clause in which it occurs can be made intelligible only by substituting in its place the words "causes of action."

It is a rule of statutory construction that "where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied." Suth. Stat. Const., sec. 260; 17 Am. and Eng. Ency. of Law, pp. 19, 20. This rule is equally applicable in construing a Constitution or other written instruments. It is apparent from the context of the clause of the Constitution before quoted that it was the intention of the framers of the Constitution to require criminal and civil causes of action arising in any county to be tried in such county, unless the venue should be changed; and, as business is not one of the elements on either an action, or of a cause of action, or a right of action, especially in respect to criminal actions or actions arising from torts, it is equally apparent that that word was erroneously used instead of the term "causes of action." Therefore, in construing the clause under consideration, the

latter words must be substituted for the former. The clause, after the substitution, is still so indefinite and general as to render it necessary in each case in which the venue is made an issue to resort to the common law in order to determine whether the venue has been properly laid.

In the case at bar no injury resulted to the plaintiffs from the alleged negligence of the defendant until the death of the said Thomas F. White. Therefore his death, and not the negligence of the defendant, was the proximate cause of the injury for which the plaintiffs seek to recover. Both the alleged negligence of the defendant and the death of the said Thomas F. White, which resulted therefrom, were, however, material and traversable facts, which the plaintiffs, to maintain the action, were required to prove. As one of these facts occurred in Carbon county and the other in Salt Lake county, the cause of action may be said to have arisen in either county; and under the common law, which in that respect is in force in this State, the plaintiffs had a right to bring the action in either of said counties.

In Bulwer's Case, 4 Coke, pt. 7, p. 49, which was decided during the reign of Elizabeth, it was held that "in all cases where the action is founded upon two things done in several counties, and both are material or traversable, and the one without the other doth not maintain the action, there the plaintiff may choose to bring the action in which of the counties he will." This is a correct statement of the common law upon the subject, and it has been generally sustained and applied by the common law courts of England and by both the Federal and State courts of this country. Mayor, etc., of London v. Cole, 7 Term R. 583; Scott v. Brest, 2 Term R. 238-241; Leveridge v. Hoskins, 11 Mod. 257, 258; Sutton v. Clarke, 6 Taunt. 29; Bacon's Abridg., 81; Chitty's Plead., 269; Stephen's Plead.; 3 Starkie's Ev., 1650; Foote v. Edwards, 3 Blatchf. 310, Fed. Cas. No. 4908; Rundle v. Del. & Raritan Canal, 1 Wall. Jr. 275, Fed. Cas. No. 12139; Still-

man v. White Rock Mfg. Co., 3 Woodb. & M. 538, Fed. Cas.
No. 13446; Slack v. Walcott, 3 Mason, 508, 516, Fed. Cas.
No. 12932; Pilgrim v. Mellor, 1 Bradw. 448; Ohio & Miss.
Ry. Co. v. Combs, 43 Ill. App. 119; Marshal v. Hosmer, 3
Mass. 23; Barden v. Crocker, 10 Pick. 383; Mannville v.
Worcester, 138 Mass. 89, 52 Am. Rep. 261; Oliphant v.
Smith, 3 Pen. & W. 180; Gould's Pl. (Hamilton), 114;
Gould on Waters, secs. 428, 445-446; Angell on Water-
Courses, secs. 420, 421; 22 Ency. Pl. and Pr., 780, note 3.
It was sustained and applied by this court in the case of Des-
eret Irr. Co. v. McIntyre, 16 Utah 398, 52 Pac. 628. In
Foot v. Edwards, 3 Blatchf. 313, Fed. Cas. No. 4908, Inger-
soll, J., said: "It being well settled that in a case of this
kind the suit must be brought where the cause of action arose,
it becomes essential, in order to determine whether this suit
has been brought before the proper court, to determine what is
the cause of action. An action is 'the lawful demand of one's
right.' The cause of this lawful demand, or the reason why
the plaintiff can make such demand, is some act committed by
the defendant, and some damage sustained by the plaintiff in
consequence thereof. The commission or omission of an act
by the defendant, and damage to the plaintiff in consequence
thereof, must unite to give him a good cause of action. No
one of these facts by itself is a cause of action against the de-
fendant. The wrongful diversion, then, of the water of the
stream, in Connecticut, by the defendant, and the consequent
damage which the plaintiff's mill in Massachusetts has sus-
tained, constitute the cause of action. A part of that which
is essential to the plaintiff's right to recover took place in
Connecticut. Without the commission of the act of diversion
in Connecticut, there would have been no good cause of action.
With it there is a sufficient cause of action. The act of
diversion, which arose in Connecticut, and the other fact
existing, give to the plaintiffs a cause of action. That
which is essential, therefore, to the plaintiffs' right of

recovery against any one, or their cause of action, arose
where the suit has been brought. This conclusion from
the principle stated would be quite satisfactory without
the authority of adjudged cases to support it. Where
two material facts are necessary to give a good cause of action,
and they take place in different counties, the cause of action
may be said to arise in either county. Various authorities
state the rule as follows: 'When an action is founded upon
two things in different counties, both material to the mainten-
ance of the action, it may be brought in the one county or the
other.' Com. Dig., 'Action,' N. 11. 'Where an injury has
been committed in one county to real property situate in an-
other, or wherever the action is founded upon two or more
material facts, which took place in different counties, the
venue may be laid in either.' 1 Saunders' Pl. and Ev., 413.
In the case of Scott v. Brest, 2 Term R. 238, Ashurst, J.,
in speaking on this subject, says: 'Supposing the foundation
of the action to have arisen in two counties, I think that,
where there are two facts which are necessary to constitute the
offense, the plaintiff may *ex necessitate* lay the venue in either.'
In Bulwer's Case, 7 Coke 1, it is thus laid down: 'When
matter in one county is depending upon the matter in the
other county, there the plaintiff may choose in which county
he will bring his action.' And, 'If a man doth not repair a
wall in Essex which he ought to repair, whereby my land in
Middlesex is drowned, I may bring my action in Essex, for
there is the default; or I may bring it in Middlesex, for there
I have the damage.'" In Slack v. Walcott, 3 Mason 516, Fed.
Cas. No. 12932, Story, J., said: "The wrong done by stop-
ping the flow of the water by any obstruction or drain in
Rhode Island is an injury done to the well itself in Massachu-
setts. In a just sense, the wrong may be said to be done in
both States, like the analogous case of an injury to the land in
one county by an act done in another county." "If a trench
cut in the county of N. causes the plaintiff's land to be over-

flowed in the county of W., although the statute requires all actions to be brought and tried in the county where the cause of action arises, the action may be brought and tried in W." Syllabus in Sutton v. Clarke, 6 Taunt. 29.

Respondent's counsel, in a supplemental brief, requested that our especial attention be given to Boston & M. R. Co. v. Hurd, 56 L. R. A. 218, note "E" (s. c., 47 C. C. A. 615, 108 Fed. 116), and the cases there cited, as follows:   Van Doren v. Pennsylvania R. Co., 35 C. C. A. 282, 93 Fed. 260; Louisville & N. R. Co. v. Williams, 113 Ala. 402, 21 South. 938; Derr v. Lehigh Valley R. Co., 158 Pa. 365, 27 Atl. 1002, 38 Am. St. Rep. 848; DeHarn  v. Mexican Nat. R. Co., 86 Tex. 68, 23 S. W. 381; Needham v. Grand Trunk R. Co., 38 Vt. 294; Rudiger v. Chicago, St. P., M. & O. R. Co., 94 Wis. 191, 68 N. W. 661.   The note referred to reads as follows:   "It is also well established that if the injury occurs in one State, and death results therefrom in another, the cause of action is regarded as having arisen in the former State, and is therefore governed by its laws."   As there is no common law remedy for injuries causing the death of a person, the right of the personal representatives or next of kin of the deceased person whose death has been caused by the negligence or wrong of another, to maintain an action for damages on account of such death, exists only when granted by statute.   A statute of a State has no force beyond its boundaries.   Therefore such a right in a State is solely dependent upon and governed by the terms of the statute which grants the right therein.   For this reason, as held in the cases cited in the note referred to, "the right of action necessarily depends in such cases upon the *lex loci* of the injury, and not the *lex fori*."   In the case of VanDoren v. Pennsylvania R. Co., supra, the negligence occurred in Pennsylvania, and the death resulting therefrom occurred in New Jersey.   The suit was instituted in the latter State.   A demurrer was interposed on the grounds:   "(1) Because the said declaration

25 Utah—23.

does not allege that the plaintiff is a resident of the State of New Jersey; (2) because neither the negligence of the defendant nor the injury to said Henry Van Doren, from which the said supposed cause of action arose, occurred within the State of New Jersey." The lower court sustained this demurrer, and gave final judgment for the defendant. On appeal to the circuit court, Justice Bradford, in the opinion, said: "We are therefore of the opinion that the widow of Henry Van Doren had, under the Pennsylvania statute, a vested right of action to recover damages for the death of her husband, which unquestionably could have been prosecuted either in a court of that State or in the circuit court for the eastern district thereof. Why should it not be prosecuted in the circuit for the district of New Jersey? It is true that the New Jersey statute has no extraterritorial operation, and does not create a right to maintain an action in that State to recover damages for death resulting from personal injury caused by negligence in Pennsylvania. The right of action necessarily depends in such case upon the *lex-loci* of the injury and not the *lex fori*. On the other hand, the Pennsylvania statute could not confer jurisdiction on either the State or Federal courts in New Jersey. That statute, however, created a substantial right capable of enforcement in New Jersey by any court otherwise possessing competent jurisdiction, unless such enforcement would conflict with the policy of that State. In our opinion, there would be no such conflict. The leading case on this subject is Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439, where an action had been brought under the New Jersey statute above referred to in a state court of New York by an administratrix, appointed in the latter State, to recover damages for the death of her husband, resulting from injury alleged to have been caused by negligence on the part of the defendant in New Jersey. The action was removed to the circuit court for the northern district of New York. The circuit court held that the action could not be sustained. -The

Supreme Court reversed the judgment. . . . The learned judge below, in sustaining the demurrer on the second ground, namely, 'because neither the negligence of the defendant, nor the injury to said Henry Van Doren, from which the said supposed cause of action arose, occurred within the State of New Jersey, was clearly in error. Confined, as the defendant was, to the two causes specified, the demurrer should have been overruled." While there is some conflict of decisions on this subject, it is generally held that a right given by the statutes of one State will be recognized and enforced in the courts of another State, when not against the policy of the other State, or whose laws grant a similar right. See Thomas, Negligence, Rules, Decisions, and Opinions, p. 496, et seq. In the case of Louisville & Nashville R. Co. v. Williams, 113 Ala. 404, 21 South. 938, the court said: "The principle is too well established to be brought in question that at common law a civil action does not lie for a wrongful act or omission causing the death of a person. The personal representative of the deceased has no manner of right growing out of such wrong, unless it is conferred by statute; and when it is so conferred the statute has no operation upon acts or omissions done or suffered beyond the limits of the State enacting it. The legal consequences of a person's acts are determined by the law obtaining when and where the acts are performed. In this State we have a statute which gives the personal representative of the deceased a remedy by suit against the wrongdoer to recover a penalty for a wrongful act or omission causing the death of his intestate, and it is in virtue of this statute alone that the present action is sought to be maintained. The effort is to have this statute overleap the boundary of the State and convert into an actionable wrong alleged conduct of the defendant, which, in the State where it occurred, did not constitute an actionable wrong. Upon plain principles, such an effort must fail." The other cases cited in support of the note are to the same effect.

Angell, in his work on Water Courses, after stating the rule announced in the Bulwer case, says in section 421: "But though it may be true that a wrong done in one State, injuriously affecting property situate in another State, is, in a just sense, a wrong in both, yet how stands the law as regards the remedy? The question is not one of venue, but of jurisdiction. It is hardly necessary to point out the difference there is, as regards actions and suits, between the relation of counties in the same State and the relation between two distinct and independent States." In the case of Pilgrim v. Mellor, 1 Bradw. 452, the court said: "Nor is the case of Thompson v. Crocker, 9 Pick. 59, to the point, for in that case the action was commenced in the county of Plymouth, where the injury was sustained; and it was held that the suit was properly brought. What was said about that being the only place to bring the action, was mere dictum, and afterwards overruled in Barden v. Crocker, 10 Pick. 383. The case of Eachus v. Trustees of Ill. & Mich. Canal, 17 Ill. 534, and many other cases of that character, were decided upon quite a different principle. There the land injured was situated in a foreign jurisdiction, and for that reason alone the court refused to entertain the action. Angell, in his treatise on Water Courses (section 421), remarks that it is hardly necessary to point out the difference there is as regards actions and suits between the relation of counties in the same State and the relation between two distinct and independent States."

As both Carbon and Salt Lake county are in the same State, which by statute has granted to the plaintiffs the right to maintain an action for the death of their son, which resulted from the negligence of the defendant, the cases quoted in support of the note specially called to our attention are not in point, and do not affect the doctrine of the Bulwer case, which is applicable to the case at bar.

2. The defendant in this case, without demurring to the original complaint on the ground of a want of jurisdiction.

or otherwise raising the question of jurisdiction of the trial court, filed an answer, in which the material allegations were denied, and upon the issues so formed the parties entered upon the trial, and after the plaintiffs rested, the defendant moved for a nonsuit, which was sustained, and a judgment entered dismissing the case. That judgment, on appeal, was reversed by this court, and the case was remanded for a new trial (22 Utah 138). Afterwards the plaintiffs made and filed by leave of the court below the amended complaint hereinbefore mentioned, and the defendant demurred to the same on two grounds: "(1) That the said second amended complaint does not state facts sufficient to constitute a cause of action; (2) that said second amended complaint is uncertain, in that it can not be determined therefrom whether the said decedent died on account of inhaling the alleged impure air in the car, or inhaling the pure air in the open air." Notwithstanding this demurrer did not specify as one of its grounds that the court had no jurisdiction, it was sustained on that ground, and the case was accordingly dismissed. Under article 8, section 7, of the Constitution, the district court, in which the action was instituted, is one of general, original jurisdiction. The clause of the Constitution requiring actions arising in any county to be tried in such county does not affect the general jurisdiction of the district courts. Therefore the court below had jurisdiction over the subject-matter of the action, and a defendant can waive his right, under the Constitution, to have an action against him tried in the county where the cause of action arose; so that, even if it were conceded that the cause of action in the case at bar arose in Carbon county, the defendant waived its right to have the case tried there both by failing to object to the jurisdiction of the court at the former trial and by demurring to the amended complaint on the sole grounds specified in its demurrer. St. Louis, etc., Ry. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659;

Texas & Pac. Ry. Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Central Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98; Interior Construction Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272. 40 L. Ed. 401; Putney v. Collins et al., 3 Grant, Cas. 72; Fennell v. Guffey, 155 Pa. 38, 25 Atl. 785; Kenney v. Greer, 13 Ill. 432-449, 54 Am. Dec. 439; The Indianapolis & Mad. R. R. Co. v. Solomon, 23 Ind. 534. In the case in 160 U. S. 219, 16 Sup. Ct. 272, 40 L. Ed. 401, Mr. Justice Gray, in the opinion, said: "The act of March 3, 1887, c. 373, as corrected by the act of August 13, 1888, c. 866, confers upon the circuit courts of the United States original jurisdiction of all civil actions, at common law or in equity, between citizens of different States, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000; and provides that, 'where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant.' 24 Stat. 552, 25 Stat. 433 [U. S. Comp. St. 1901, p. 514]. The circuit courts of the United States are thus vested with general jurisdiction of civil actions, involving the requisite pecuniary value, between citizens of different States. Diversity of citizenship is a condition of jurisdiction, and, when that does not appear upon the record, the court, of its own motion, will order the action to be dismissed. But the provision as to the particular district in which the action shall be brought does not touch the general jurisdiction of the court over such a cause between such parties, but affects only the proceedings taken to bring the defendant within such jurisdiction, and is a matter of personal privilege, which the defendant may insist upon or may waive at his election; and the defendant's right to object that an action within the general jurisdiction of the court is brought in the wrong district is waived by entering a general appearance without taking the objection." In the

case in 145 U. S. 603, 12 Sup. Ct. 905, 36 L. Ed. 829,
it appears that the defendants not only demurred, but an-
swered, and the second ground of the demurrer was that the
petition did not set out a cause of action, and the court held
that under such circumstances the defendants could not there-
after challenge the jurisdiction of the court on the ground that
the suit had been brought in the wrong district.     In the
case in 141 U. S. 132, 11 Sup. Ct. 982, 35 L. Ed. 659, the
court said:  "Without multiplying authorities on this ques-
tion, it is obvious that the party who in the first instance
appears and pleads to the merits waives any right to challenge
thereafter the jurisdiction of the court on the ground that
the suit has been brought in the wrong district.     Charlotte
Nat. Bank v. Morgan, 132 U. S. 141, 10 Sup. Ct. 37, 33
L. Ed. 282; Fitzgerald Construction Co. v. Fitzgerald, 137
U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608."   In the case in
155 Pa. 40, 25 Atl. 785, the court said:   "The common pleas
of Allegheny county has general jurisdiction in actions of
covenant.   When the court has jurisdiction of the subject-
matter, and is only restricted from entertaining the individual
case by some circumstances peculiar to itself, the objection
to jurisdiction may be waived.   Putney v. Collins, 3 Grant,
Cas. 72.   It was said by Mr. Justice Strong, in delivering
the opinion of the court in that case:   'In this case the de-
fendant's objection was that the cause of action was local;
that the tort complained of had been committed in Armstrong
county, and not in Clarion; and that the action could only
be maintained in Armstrong.   This was only an objection to
the power of the court to try the particular case, and not to
its power to try cases of the same general character.'   If
we concede the defendant's position, it was too late to take
advantage of it after plea pleaded.   It was at most a personal
exemption, and the point should have been raised before the
trial.   By failing to do so he has waived his privilege."   A
statute of Illinois prohibited the suing of a defendant out

of the county where he resided, and in the opinion delivered by Mr. Justice Trumbull in the case in 13 Ill. 450, 54 Am. Dec. 439, it is said: "Its object was to restrict a practice which had before obtained, of suing the defendant in any county of the State which the creditor might elect, and thereby prevent vexation to a defendant in being wantonly sued in a remote county. The statute gives the defendant a privilege, and, being a privilege, he has, consequently, the right to waive it, and must be regarded as having done so unless he makes his objection to the writ in apt time; for the exception is not to the jurisdiction of the circuit court, which, as before shown, has cognizance of all transitory actions, but to the writ as sued out and returned in a wrong county."

The judgment is reversed, and the cause remanded. The court below is hereby directed to reinstate and try the case. It is also ordered that the plaintiffs recover their costs.

BARTCH, J.   I concur in the result.

HART, District Judge (concurring in judgment).—I agree fully with the view that the word "business" in the clause of our Constitution in question should be construed as though the words "causes of action" were substituted therefor.   In support of the rule that the constituent elements of a cause of action consist of a wrongful act of omission or commission resulting in implied or actual damages, it may not be out of place to suggest that the same is in harmony with the rule stated by Bliss in his Code Pleading at section 113, that "the cause of action is the wrong;" and is likewise in accordance with the doctrine supported by the recent book of Judge Sibley on "The Right to and Cause for Action."   In brief, the doctrine of the latter work is that there is a difference  between primary or substantive law defining rights which it will establish and secondary or adjective law, which provides a remedy in aid or protection of the antecedent right; that primary and remedial rights correspond with these two great

White v. Rio Grande Western Ry. Co.

divisions of the law; that remedial rights exist only for the purpose of supporting and securing primary rights; that it is only when there is some actual or threatened invasion of some legal right that the remedial right can properly be called into operation; that "a legal wrong is the failure to discharge a legal duty, and consequently consists in some act or forbearance in violation of a legal right" (Robinson's Amer. Jurisp. 139); that a legal wrong is the violation of a primary right; that an antecedent right is required in order to characterize and condition the illegal character of the act complained of; that the legal wrong may consist of a public offense, a tort, breach of contract, express or implied, or any act or failure to act in violation of a legal right; that the action sought for is by the court, and the expression "cause for action" is therefore preferable to "cause of action;" that, while the suitor applying for a redress of injuries must show his primary rights which are threatened or invaded, the facts showing such primary or substantive rights are not, strictly speaking, the cause or reason for action; that in all actions, civil and criminal, the cause for action is to be identified with the delict, the wrong, the breach. To quote Mr. Sibley's own words (section 24): "The same facts show the commission of a legal wrong and also a cause for action. The act which constitutes the one necessarily gives rise to the other. Both exist or neither does. A wrong in every case implies a cause for action, and vice versa. And this is true in all actions, criminal and civil, at law, in equity, and admiralty. Is not the wrong, then, on the basis of legal principle, beyond question identified as the cause?" The same author quotes from Phillips on Code Pl.: "When a legal right is wrongfully infringed, there accrues *ipso facto* to the injured party a right to obtain legal remedy by action against the wrongdoer;" and comments thereon in part, as follows: "But it is to be observed that the act constitutes and is the delict; not the right it infringes. Hence, while the author [Mr. Phillips] saw that when a

wrong is committed there 'accrues the right' to 'legal remedy,' that this was conferred by the remedial law was not perceived. . . . Remotely, and in the view that draws into a cause all antecedents, suits can be said to rest upon primary rights, and with the equal truth on the existence of organized society. . . . Judicial tribunals are not concerned about the protection of primary rights, save as that is an incident of the redress which, by force of the remedial law, they are bound to give to an injured party when their violation has been duly shown. . . . However, if the great purpose of actions was the protection of antecedent rights, still the cause for action would be formed in the legal wrong. Until that is shown, no right to action appears, while upon its admission or proof a cause for action at once becomes legally manifest. Both arise from the wrong and the law of remedy. . . . Primary rights have no relation to either, except as a condition to the existence of legal wrongs. They are no more a part of the cause for judicial intervention than is a public way on which a log wrongfully is left, over which one falls to his hurt. Putting the obstruction there was the wrong, to which the road is related simply as one condition of the tortious act, not as any part of the cause for action to redress it. So the presence of and right to life are conditions essential to murder, but in no admissible sense a part of the crime, or of the cause for action which it brings into being." Sibley, secs. 27-30. In discussing the "locus of the cause for action" the same author, at section 64, says: "This question may arise and become of importance, not only in regard to the place for criminal prosecutions, but also in respect to statutes of limitations, the performance of contracts, and the jurisdiction of courts. As to the latter, this has already been made apparent. The doctrine which always finds the cause for action in a legal wrong, however, will greatly simplify the problem of its locus in many cases. For example, take the common provision that if, by the laws of one state or county

where the cause of action arose, the suit is barred, it shall be
barred in the State where it is instituted; or the one by
which certain actions 'must be brought in the county where
the cause, or some part thereof, arose,' on the principle that
the 'cause' is to be found in a legal wrong, whatever the nature
of this may be—the place where the breach of duty occurred,
out of which it arises, at once settles the question, and makes
the dichotomous splitting of a cause for action between the
delict and primary right, which some courts have assumed
to be necessary in order to support their jurisdiction, wholly
superfluous." The author in his book quoted from above
fails to make clear the relation of damages to the cause of
action, but he probably includes damages, actual or implied,
in the expression "legal wrong."

In considering the question whether this action should
have been brought in the county where the injuries are alleged
to have been sustained or in the county in which deceased
came to his death, the rule in murder cases may be considered
as closely analogous. At the very early common law the more
common holding was that, where the mortal blow was given
in one county, and death ensued in another county, the offense
should be prosecuted in the county where the blow was given.
U. S. v. Guiteau, 47 Am. Rep. 247, and cases there reviewed.
In 1548 the statute of 2 and 3 Edw. VI, c. 24, which is
common law in our country, enacted that in such a case the
trial might be in the county of the death. Our statute (sec-
tion 4585, Rev. Stat. 1898) provides that the action shall
be brought in the county where the blow is struck. Mr.
Bishop, in 1 Crim. Law, sec. 115, note 2 (5 Ed.), says:
"The true view, therefore, is that the infliction of the mortal
blow constitutes the crime in felonious homicides, yet until
death the mortality of the wound can not be established in
evidence." In the same elaborate note he argues in favor of
his view as follows: "And it is not generally among men
recognized as sound to hold that a wound not even described

as mortal is a force from him who inflicts it, operating as an abiding presence of the wrongdoer in every county into which the injured person may choose to carry the wound." And as illustrating to what lengths the contrary rule would lead, he suggests: "So, if an assault creating a wound not mortal is given in Maine, and the injured person comes to Massachusetts, where he feels a pain from it, the offender may be indicted in Massachusetts for the battery." In the case of People v. Gill, 6 Cal. 637, it was held that murder was committed at the time the mortal blow was given, although death did not follow for some time after. But in a civil case, such as the one at bar, if the fact of death be regarded as something more than evidence of the fatal nature of the injury, yet the wrongful death-dealing act would seem to be the principal element of the case. The instance of one standing in one county and putting in motion some physical force to the injury of another in an adjoining county is not analogous to the case at bar. The civil cases seem to lend some support to the view that in such a case the cause of action arises where the wrongful act occurred. Thus, in Van Doren v. Pennsylvania R. Co., 35 C. C. A. 282, 93 Fed. 260, the syllabus reads: "Under a statute giving a right to sue for the recovery of damages resulting from injury caused by negligence, unlawful violence, or wrongful act, the tort constituting the gist of the action is not the resulting death, but such negligence, violence, or act, although death must result before the statutory cause of action accrues." In De Harn v. Mex. Nat. R. Co., 86 Tex. 68, 23 S. W. 381, the headnote reads: "That the injured party died within this State from injuries received elsewhere does not give right of action. The primary cause or the wrong suffered was when the injury was inflicted, and the residence of the deceased or the place of his death are immaterial." In Rudiger v. Chicago, St. P., M. & O. R. Co., 94 Wis. 191, 68 N. W. 661, the court say at page 196, 94 Wis., and at page 662, 68 N. W., in speaking of such an action: "The

foundation of the action is obviously the wrongful or negligent act or default which caused the injury, and which is in contravention of the law of the State. This, as we have said, is the substantive ground of the action."

To refer the cause of action to the wrongful act has an important bearing upon the law of pleading as to joinder of actions. To illustrate: The case of King v. Chicago, M. & St. P. Ry. Co. (Minn.), 82 N. W. 1113, 50 L. R. A. 161, 81 Am. St. Rep. 238, holds that "injuries to the person, and injuries to the property of the person injured, both resulting from the same tortious act, are separate items of damages, constituting but one cause of action." A note to this case says: "The rule supported by the greater weight of the American authorities treats a single act causing injury as giving rise to but a single cause of action, whether or not the act infringes upon different rights, or causes different injuries." To reach this view it would seem to be necessary to regard the wrongful act as the principal ingredient in the cause of action, and the resulting injury as subsidiary or incidental. While the question is a very close one, and men may reasonably differ in judgment thereon, I am inclined to give preference to the rule requiring the action in such a case as the one at bar to be brought in the county of the alleged wrongful acts of defendant, for the reasons that the same is in analogy to our statute governing the trial of murder cases under like conditions; that the same is in accordance with the more general rule of the early common law; that the same is conducive to certainty in determining where a cause of action arises and what actions may be joined (Bliss, Code Pl., sec. 113); and that the same seems to be supported by the weight of reason, and the decisions in civil and criminal cases, so far as they bear upon the rule.

On the question as to whether the clause of the Constitution in question is so far jurisdictional that the same can not be waived in any case, I see no reason for holding that the

litigant has a right in a case the nature of which would have
been purely transitory at the common law, to experiment with
the court by trying the case upon its merits, without raising
the question whether the same is brought in the right county,
and then, after an adverse decision, raise the question of
whether the case should not have been originally brought in
another county. The rule is thus stated in 22 Ency. Pl. and
Pr., pages 815, 816, under the title "Venue;" "It may be
stated as a general rule that the bringing of an action in
an improper county is not a jurisdictional defect, where the
court has general jurisdiction of the subject-matter, and that
the statutes fixing the venue in certain actions confer a mere
personal privilege, which may be waived by a failure to claim
it in the proper manner and at the proper time." The fol-
lowing cases, among a great many others, are cited in support
of the rule: Fennell v. Guffey, 155 Pa. 38, 25 Atl. 785;
Bonner v. Hearne (Tex. Sup.), 12 S. W. 32; De La Vega v.
League, 64 Tex. 214; Moody v. First Natl. Bank of Athens
(Tex. Civ. App.), 51 S. W. 523; Kane v. U. P. R. R. Co.,
5 Neb. 105; Blackford v. Lehigh Val. R. R. Co., 53 N. J.
Law 56, 20 Atl. 735; Balt. Cent R. R. Co. v. Meyers, 10
C. C. A. 485, 62 Fed. 397; Scott v. Hoover (C. C.), 99 Fed.
247; and So. Exp. Co. v. Todd, 5 C. C. A. 432, 56 Fed. 104.
In the latter case it is said, after a review of numerous
authorities: "Thus it will be seen that for more than sixty
years the Supreme Court has uniformly held that a general
appearance or an answer to the merits by the defendant was a
waiver of the objection that the action was brought in the
wrong district, and that it was too late thereafter to insist
upon it." In some of the States, such as Wisconsin, Montana,
and California, there are statutory provisions to the effect
that, if the county in which the action is brought is not the
proper county, it may be tried therein, unless the defendant
objects; but, of course, decisions under such a statute are
entitled to little or no weight in this jurisdiction, where there

is no such statute.   It is true that California has held in the cases cited in Konold v. Ry. Co., 16 Utah 151, 51 Pac. 256, under a constitutional provision of that State "that all cases for the recovery of the possession of, quieting the title to, or for the enforcement of liens upon real estate should be commenced in the county in which the real estate is situated," is jurisdictional, and can not be waived.   But it does not follow that the same rule of construction should be applied under our own Constitution to those actions which at common law were transitory, and not local, in their nature. It should be noted, in connection with the constitutional provision of California, above referred to, that the same is a part of the very section conferring, defining and limiting the jurisdiction of said courts; while in the Utah Constitution the clause in question occurs in section 5, article 8, and the section directly conferring jurisdiction upon district courts is contained in section 7 of the same article.   In the case of Rogers v. Cady, 104 Cal. 292, 38 Pac. 81, 43 Am. St. Rep. 100, the court made clear the reason for holding the particular clause of their Constitution to be jurisdictional.   "The Constitution has denied to the superior court of Lassen county any jurisdiction over the subject-matter of the foreclosure proceedings [mortgage on lands], and, as that court never had any jurisdiction to entertain the action, its determination upon any question arising in this proceeding can not have any authority.   There are certain cases in which the jurisdiction of a court depends upon the existence of some quasi-jurisdictional fact necessary to be proven in order to authorize the court to act, and which it must itself determine from the evidence before it can have jurisdiction to determine the controversy.   Brittain v. Kinnaird, 1 Brod. & B. 432, is a leading illustration of this principle; and in Noble v. Union River R. R. Co., 147 U. S. 174, 13 Sup. Ct. 271, 37 L. Ed. 123, may be found reference to a number of cases of the same character; but the present case does not fall within this principle, for the reasons

that, as above seen, there was no question of fact to be determined by the trial court. When the subject-matter upon which the jurisdiction of a court rests is limited by the Constitution, the court looks to that instrument for its jurisdiction, and can not, by its mere decision, acquire jurisdiction over a matter therein denied it." By the California Constitution the superior court had no jurisdiction of the subject-matter of actions affecting real estate situated outside of the county. The proceedings of the constitutional convention throw some light upon the purpose and meaning of the clause in question. The convention having under consideration article 8 on "Judiciary" the following proceedings were had, as appear on page 1503 of the published report of the convention: "Mr. Evans (Weber): I desire to offer the following amendment to section 5, after the word 'year:' 'All civil and criminal business arising in any county must be tried in such county, unless a change of venue be taken in such cases as may be provided by law, or upon consent of the parties, in writing in civil cases.' Mr. Varian: What is the necessity for that? Mr. Evans (Weber): I think the article by implication now would require that all the business should be transacted in the county where it arises. My only purpose was to make it certain that all business should be tried in the county where it arises, and I want to add this with the qualification there of cases where a change of venue might be taken as provided by law. There may be some criminal case where all the jurors in the county are prejudiced, and it would be necessary to remove it into another county; and then in civil cases, if parties want to stipulate it into another county, they can do so. Mr. Varian: Won't that amendment cut out the general proposition for a change of venue in civil cases whether the parties stipulate or not? Mr. Evans (Weber): I think not. Mr. Varian: It seems so to me; that is purely a matter of legislation anyhow. Mr. Evans (Weber): Stipulation is a matter, anyway, of consent, and that might be stricken out—

that part of it. If there is any objection to that, I would ask that that part of it be stricken out. The amendment, as modified, was agreed to."

Being of the opinion that defendant has waived the question of venue, and that in such a case as this the same can be waived under our Constitution, I concur in the judgment of reversal.