## Bisko *v.* Braznell Gas Coal Company, Appellant.

*Negligence—Mines and mining—Coal mines—Explosion of gas—Act of May 15, 1893, P. L. 52.*

1. Under the Act of May 15, 1893, P. L. 52, unless it is made to appear that the mine foreman of a bituminous coal mine has made a requisition for materials of the owner or superintendent, and it has been refused, or it is made to appear that the owner or superintendent has failed "to keep on hand at the mines" the necessary materials or supplies, there can be no basis for a charge of negligence in failing to furnish supplies which will support an action against the owner of the mine.

2. No recovery can be had against an owner of a coal mine for personal injuries caused by an explosion of gas, on the ground that the company had neglected to furnish proper materials, where it does not appear that such neglect was the cause of the injuries.

3. Where a coal miner in a mine otherwise safe knows that there is an accumulation of gas in a particular entry, and goes under the order of the foreman to make the entry safe by repairing a brattice, he assumes the risk incident to the service, and if he is injured by an explosion of gas in the entry he cannot recover from the mine owner.

4. Where a workman undertakes an extra hazardous employment which is obvious to him, he assumes the risk and danger.

5. Where a coal mine is free from gas in dangerous quantities to such an extent that open lamps are safely used, but in a particular pocket there is an accumulation of gas, a workman, who is sent to repair a brattice and approaches the pocket with an open light in his hand, cannot recover from the mine owner damages for personal injuries resulting from an explosion of the gas caused by the open lamp.

Argued Oct 26, 1908. Appeal, No. 110, Oct. T., 1908, by defendant, from judgment of C. P. No. 4, Allegheny Co., Third T., 1908, No. 108, on verdict for plaintiff in case of Adam Bisko v. Braznell Gas Coal Company. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries.   Before
CARNAHAN, J.

The opinion of the Supreme Court states the facts of the
case.

Verdict and judgment for plaintiff for $4,250.   Defendant
appealed.

*Error assigned* among others was (1) in refusing binding in-
structions for defendant.

*J. S. Ferguson*, with him *Francis S. Bennett*, for appellant,
cited : McHugh v. Jones & Laughlin Steel Co., 219 Pa. 644 ;
Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185 ; Hall v.
Simpson, 203 Pa. 146 ; Redstone Coke Co. v. Roby, 115 Pa.
364 ; Reese v. Biddle, 112 Pa. 72 ; Waddell v. Simoson, 112
Pa. 567.

*Joseph Stadtfeld*, for appellee, cited : Webster v. Monon-
gahela River Consolidated Coal & Coke Co., 201 Pa. 278 ; Fos-
ter v. Steel Co., 216 Pa. 279 ; Gilbert v. Elk Tanning Co., 221
Pa. 176 ; Saylor v. Chartiers Coal & Coke Co., 31 Pa. Superior
Ct. 447.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909 :

This is an action of trespass to recover damages for injuries
which the plaintiff, an employee, alleges he sustained by rea-
son of the negligence of his employer, the defendant company.

The defendant is the owner of certain coal property at Bent-
leysville, Washington county, and in the fall and winter of
1905, for the purpose of operating the coal, put down two
shafts, 185 feet apart, and connected them at the bottom by a
main or base entry.   From this entry, four butt entries were
driven into the coal parallel to each other and for a distance
of about 200 feet.   There was a cut through between entries
Nos. 1 and 2, and another cut through between entries Nos. 2
and 3.

On the surface near one of the shafts there were three boil-
ers which furnished steam for the hoisting apparatus, pumping
water, running an air compressor, and for a jet at the bottom
of the shaft which aided in ventilating the mine.   The air

compressor operated the punching machines used in mining the coal. There were no fans used in ventilating the mine. The air in the mine was kept in motion by the steam jet and was directed through the mine in the ordinary way by brattice work.

At the time of the accident the defendant company had in its employ a superintendent, a mine foreman, and an assistant foreman who also acted as fire boss. The foreman and his assistant had been duly certified, and their competency and that of the superintendent was not questioned.

The plaintiff, a miner of some years' experience, was employed by the defendant company and began to work in this mine on February 5, 1906. He continued his employment there until the night of March 19, 1906, when he was injured by a gas explosion in butt entry No. 2. On that evening he entered the mine and began work about seven o'clock in butt entry No. 3. He used a punching machine in mining which was operated by compressed air. After working two or three hours, he was compelled to quit by reason of the insufficiency of the air in the compressor to operate the machine. He and three other workmen were then directed by the assistant foreman to repair certain brattice work in butt entry No. 2. It appears that there had been a break in the roof of butt entry No. 2, and that it was necessary to brattice off the place so as to protect the mine from any gas in the pocket or hole which had been made in the roof. The plaintiff testified that the brattice work " is constructed so as to direct the air, or ventilation, to go past this place where the gas may accumulate, and drive out that gas with the ventilation.". Just as the plaintiff was commencing to repair the brattice work, the gas in the hole or pocket in the roof was ignited by the open lamp which the plaintiff had in his hand and an explosion followed resulting in severe injuries to the plaintiff.

The statement avers that the defendant " was negligent in not providing proper and sufficient means to carry away the accumulation of gas and to provide proper ventilation and means of ventilation in said mine, and through its negligence and carelessness in that behalf, an explosion occurred on March 19, 1906, and as a result thereof, plaintiff was thereby permanently injured." On the trial of the cause the plaintiff

contended that the defendant was negligent (1) in the failure to supply materials necessary for ventilating the mine; (2) in not maintaining a safe working place for the plaintiff; (3) by reason of inadequate means of ventilation. The learned judge submitted the case to the jury and a verdict was rendered for the plaintiff. Judgment was entered on the verdict and the defendant company has taken this appeal.

1. The Act of May 15, 1893, P. L. 52, 3 Purd. (13th ed.) 2591, by art. 7 provides as follows: "It shall be the duty of the superintendent, on behalf and at the expense of the operator, to keep on hand at the mines at all times, a full supply of all materials and supplies required to preserve the health and safety of the employees as ordered by the mine foreman and required by this act."

It is claimed by the plaintiff, and he testified, that two weeks before the accident he had notified the superintendent that the roof in butt entry No. 2 should be supported by a post, and the place where the fall had occurred should be bratticed off; that he also heard the foreman tell the superintendent that the roof was in a bad condition and that it ought to be fixed; that the men were afraid to go into the place; and that the superintendent promised to have it attended to. The plaintiff further testified that he could find no timber or other material in the mine with which to repair the brattice work. He admitted that he didn't know whether there was any material for that purpose on the outside of the mine. On the other hand, the uncontradicted testimony of the defendant company showed that there was sufficient material of all kinds on the ground near the mouth of the mine for any purpose for which it would be needed in the mine. It was contended by the plaintiff that there should have been a supply room in the mine where materials were kept for use in the construction of brattices and other work, and the superintendent testified that it was customary to have a supply room in a developed, but not an undeveloped, mine, such as defendant's mine.

Article 6 of the act of May 15, 1893, imposes upon the mine foreman, who is required to be a "competent and practical inside overseer," the duty of keeping a careful watch over the ventilating apparatus, timbers and drainage; seeing that as excavations advance slate and rock overhead are taken down or

carefully secured against falling, and that "sufficient props, caps and timbers of suitable size are sent into the mine when required"; and further that "such props, caps and timbers shall be delivered in the working places of the mine." The article also provides: "Every workman in want of props or timbers and cap pieces shall notify the mine foreman or his assistant of the fact at least one day in advance, giving the length and number of props or timbers and cap pieces required, but in cases of emergency the timbers may be ordered immediately upon the discovery of any danger." The rules of the mine are required to designate the place and manner of leaving orders for the timber.

It will be observed that while the act of assembly requires the owner or superintendent to furnish the necessary materials or supplies for use in the mine, they are only to be sent into the mine "as ordered by the mine foreman." The mine foreman acts at the instance of the workman who, if he needs any material, is to notify the foreman or his assistant. Unless, therefore, it is made to appear that the mine foreman has made a requisition for materials on the owner or superintendent and it has been refused, or it is made to appear that the owner or superintendent has failed "to keep on hand at the mines" the necessary materials or supplies, there can be no basis for a charge of negligence in failing to furnish supplies under the act of assembly which will support an action against the owner of the mines. In the case at bar, the most that can be said of the plaintiff's testimony is that it shows that the witness told the superintendent of the necessity for supports for the roof and brattice in butt entry No. 2, and that the superintendent promised to have the necessary work done to put the mine in proper shape at that place. The plaintiff also testified that he heard the mine foreman tell the superintendent that the roof was bad and ought to be fixed, but there is not a particle of evidence tending to show that the foreman made any demand at any time upon the superintendent for any material with which to do the work, or for material for any of the workmen to construct or repair a brattice at that point.

But if we assume that there was not an adequate supply of material on the surface or in the mine for the purpose of repairing the brattice, it cannot affect this case or impose liabil-

ity upon the defendant company, for the reason that it was not the cause of the plaintiff's injuries. He was employed as a miner and was engaged in mining coal in butt entry No. 3, and not in butt entry No. 2 where the roof fell and the explosion occurred. Had he been engaged in mining coal in butt entry No. 3 and the explosion in butt entry No. 2 had injured him, there might be some ground for the contention that the defendant company was liable for not furnishing an adequate supply of materials for constructing or repairing the brattice. But at the time plaintiff was injured he was engaged in repairing the brattice which was to be used in diluting or carrying off any gas which had accumulated in the pocket or hole made by the fall in the roof of No. 2 entry. The lack of supplies or material or tools necessary in the repair of the brattice did not cause the plaintiff's injuries; they resulted from the gas in the pocket or hole in the roof being ignited by the blaze from the plaintiff's open lamp. If the mine had been full of material, it would not have prevented the accident. There was therefore a failure to connect any alleged negligence on the part of the company in furnishing proper materials with the injury caused to the plaintiff, and hence though there was neglect to furnish the materials, it will not support an action against the defendant.

2. It is also contended that the defendant was negligent in not furnishing the plaintiff a safe place in which to work. The place assigned him to repair the brattice was near the hole in the roof of butt entry No. 2. It is not alleged, at least the evidence does not show, that any other part of the mine was unsafe or dangerous at that time. While it does appear that during the sinking of one of the shafts an explosion occurred resulting in loss of life, and further that gas had frequently been detected in the mine, yet there was no evidence in the case that would warrant the jury in finding that at the time of the accident any other part of the mine was dangerous by reason of the accumulation of gas. As said by the learned judge in his charge: " The plaintiff himself said as to the ventilation of the mine he had no reason to complain that night. He expressly stated that the air was all right in the mine that night. He said there was a lack of air for the air-compressor, not enough to operate the air-compressor, but so

far as breathing purposes were concerned, the air was all right in his entry, and so far as we know the air was sufficient for breathing purposes in every part of the mine except this particular point where the accident happened." From the evidence it is clear that at the time of the accident the mine was properly ventilated, and in no other part of the mine was gas present in sufficient quantities to render it dangerous to persons employed in the mine. The mine foreman, as required by the act of 1893, officially reported on the day of the accident: "The mine is safe and healthy." If, therefore, the place at which the plaintiff was at work was dangerous, it was made so by gas accumulating in the hole of the roof which the air currents through the mine would not dilute or carry off. It was for the very purpose of controlling the air currents in the mine so that they would carry off any accumulation of gas in this hole that the brattice work was being repaired by the plaintiff. Without the assistance of the brattice, the gas in the hole could not be reached by the air currents, and it would remain there undiluted and render the entry unsafe for mining. The place at which the plaintiff was directed to work, therefore, was not regarded as safe, and he was sent there to construct the brattice in order to make it safe. Provision is made for this very contingency by sec. 6 of art. 6 of the act of 1893, which provides that, "no person shall be directed or permitted to work in an unsafe place unless it be for the purpose of making it safe." The place was not unsafe by reason of anything the defendant company did or failed to do. If the brattice had been in good repair, so as to perform the service required of it, there would have been no occasion for the plaintiff to have been at work there; the place would have been safe. When, however, it became necessary by reason of the fall to procure good ventilation in that entry and thereby remove the noxious gases accumulated in the pocket or hole in the roof, the plaintiff and his assistants were sent to perform this work. It was a dangerous place, but the plaintiff and his fellow laborers who were with him knew the danger that might be encountered. It is true the plaintiff says he knew of no gas in the mine, but being a miner of some experience he manifestly knew of the fall in the roof and knew why the brattice was needed at that place. This conclusively ap-

pears from his own testimony, in which he says he notified the superintendent and heard the mine foreman tell him of the fall and the necessity for constructing or repairing a brattice at the place of the fall. The plaintiff's work was mining in butt entry No. 3, but he knew the necessity of having butt entry No. 2 clear of noxious gases and hence the notice he gave the authorities to brattice the place so that the gas might be removed by the air currents in the mine. Without this brattice he, as an experienced miner, knew the currents of air would not penetrate that part of the mine, notwithstanding the complete ventilation of every other part of the mine. We must, therefore, conclude that the plaintiff knew the hazardous character of the place in which he was to work in repairing the brattice, and, therefore, he assumed the risk incident to the service. His employment was extra hazardous by reason of the place in which the work had to be done, and this being obvious, as well to the plaintiff as to others, he assumed the danger: 20 Am. & Eng. Ency. of Law (2d ed.), 119. In Derr v. Lehigh Valley Railroad Company, 158 Pa. 365, the plaintiff's husband, a locomotive engineer, was killed by the derailment of his engine running into a snowdrift in a deep cut. The deceased had charge of an engine which had been sent out to remove snowdrifts from cuts. The manner in which the train was made up, equipped and manned, showed the purpose for which it was intended. It was held that the risks involved in the work of opening the road were intelligently assumed by the deceased, and there could be no recovery for his death. In Finlayson v. Utica Mining & Milling Company, 67 Fed. Repr. 507, a workman in a mine who was engaged in timbering an entry was killed by the fall of material which had resisted the efforts of the foreman and other workmen to dislodge it with picks but which was loosened by drilling by those employees. A judgment for the defendant was affirmed by the United States circuit court of appeals; and in the opinion it is said that the rule that an employer must provide a reasonably safe place for his employee to work " cannot be justly applied to cases in which the very work the servants are employed to do consists in making a dangerous place safe. . . . The servant assumes the ordinary risks and dangers of his employment that are known to him by the ex-

ercise of ordinary care and foresight. When he engages in the work of making a place that is known to be dangerous, safe, or in a work that in its progress necessarily changes the character for safety of a place in which it is performed as the work progresses, the hazard of the dangerous place and the increased hazard of the place made dangerous by the work are the ordinary and known dangers of such a place, and by his acceptance of the employment the servant necessarily assumes them : Armour v. Hahn, 111 U. S. 313." In the case at bar, it does not appear that the defendant imposed any danger or risk on the plaintiff in sending him to repair the brattice that was not ordinarily incident to the work. It was not the insufficient or inadequate ventilation generally of the mine that made the place of the plaintiff's employment dangerous or hazardous, but the fact, of which the plaintiff was fully cognizant, that gas might have accumulated in the hole or pocket of the roof near which he was to work and which the air currents without the aid of the brattice would not reach. The explosion was caused by the plaintiff putting his open light up to the hole and igniting the gas which had accumulated there. The place was reasonably safe except for the presence of gas in the hole and that risk the plaintiff, and not the defendant, must assume.

3. It is further contended that the defendant was negligent in not maintaining adequate means of ventilation for the mine. As we have seen, it appears that gas in dangerous quantities had been found in sinking one of the shafts, and some of the witnesses testified that the mine generated some gas, but this does not establish the proposition that the means of ventilation were inadequate to " dilute, carry off and render harmless the noxious or dangerous gases generated in the mine," as required by the act of assembly. It is no doubt a fact, as in other bituminous mines in western Pennsylvania, there was gas in this mine on the night of the accident; but it is equally true, if the evidence is believed, that the ventilation was sufficient to render it harmless. While there was some testimony showing that the boilers leaked, yet there was no testimony that showed those leaks to have interfered with the complete ventilation of the mine. The circulation of the air through the mine was aided by a jet of steam and that, from the evidence,

appears to be a proper way to ventilate a mine. There is no evidence to show that the boilers or the engine or any other apparatus used for the purpose was insufficient or inadequate to provide or maintain ample means of ventilation for the mine. The testimony of the officials disclosed their knowledge of the presence of gas in the mine, and showed that ample means had been provided for thorough ventilation. In fact, as we have seen, the plaintiff himself testified that he had no reason to complain of the ventilation of the other parts of the mine on the night of the accident; and there is no evidence in the case that would warrant a jury in finding that the means of ventilation were either inadequate or insufficient.

If, however, the contention of the plaintiff is well taken that the mine was not properly ventilated, the full and complete answer to his right to recover on that ground is that it did not cause his injuries. The negligence of a defendant will not impose responsibility unless it is the cause of the injury. From the undisputed facts in the case, open lamps and not safety lamps were used in that mine and on the occasion of the accident they were being used in the mine but no explosion occurred. The plaintiff himself, as we have seen, was using an open lamp that evening, but it caused no explosion until he " raised his hand to the hole." There was no trouble with gas in any other part of the mine on the night of the accident and there is no evidence to show that there was any gas in dangerous quantities in the mine on that night except what appeared in the pocket or hole at the fall in butt entry No. 2. Had the plaintiff observed the direction of the foreman to keep his light in the rear, the brattice would have been repaired without any injury to him. The insufficient or inadequate means of ventilation, if such there were, in the mine on that night did not cause the plaintiff's injuries and therefore will not impose liability upon the defendant for them.

We have examined this case with care, with the result that we find no evidence that convicts the defendant company of negligence which caused the plaintiff's injuries. The defendant, therefore, is not liable in this action and the learned trial court should have so instructed the jury.

The first assignment of error is sustained, the judgment is reversed and judgment is now entered for the defendant.